UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY; LM GENERAL INSURANCE COMPANY; LM INSURANCE CORPORATION; and SAFECO INSURANCE COMPANY OF ILLINOIS, | C.A. No. 19-cv-12648-DML-RSW |
| Plaintiffs, | |
| v. | **Demand for Jury Trial** |
| RELIEF PHYSICAL THERAPY & REHAB, INC. d/b/a RELIEF REHAB; WESTBORN PHYSICAL THERAPY, LLC; FIRST NATIONAL REHAB, INC.; FIRST STEP REHAB, INC.; GREAT LAKES PROFESSIONAL SERVICES, LLC d/b/a DOC PHYSICAL THERAPY & REHAB CENTER; VIVID REHAB INC; NEXTGEN PAIN ASSOCIATES AND REHABILITATION LLC; FIVE STAR COMFORT CARE LLC; STEVE'S MEDICAL SUPPLY, INC.; ORTHOPEDIC MEDICAL SUPPLIES 1 LTD.; UNITED TRANSPORTATION 1 INC.; CITY 2 CITY TRANSPORTATION, LLC; STEVEN AWADA; JOSEPH AWADA; HUSSIEN AWADA; IMAD AWADA; MAGDALENE AWADA; AMEER AWADA; MAHMOUD AWADA; ALI MERHI; MOHAMED CHEIKH; LAWRENCE ATAT; ABDUL BAYDOUN; and NURA KUTOB | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiffs Liberty Mutual Fire Insurance Company, LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois (hereinafter, "Liberty Mutual" and/or "plaintiffs"), by their attorneys SMITH & BRINK, hereby allege as follows.

## I.   INTRODUCTION

1.    This is a case about physical therapy clinics, a medical clinic, a home health provider, durable medical equipment ("DME") issuers, medical transportation providers, and the owners, agents, and representatives of the same who engaged in a scheme to defraud Liberty Mutual by submitting and causing to be submitted false and fraudulent records, bills, and invoices through the U.S. Mail seeking to collect payment from Liberty Mutual for treatment and services that were not actually performed, were medically unnecessary, were fraudulently billed, and were not lawfully rendered pursuant to Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.  In the words of a patient of several of the defendants, they ran a "scam."

2.    The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in payments from Liberty Mutual to and on behalf of the defendants pursuant to Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

2

3.     All of the acts and omissions of the defendants, described throughout this First Amended Complaint, were undertaken intentionally.

4.     By this First Amended Complaint, and as detailed in each count set out below, Liberty Mutual brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust enrichment.  Liberty Mutual also seeks declaratory relief that no previously-denied and pending claims submitted to it by the defendants is compensable.

5.     As a result of the defendants' fraudulent acts, Liberty Mutual has paid in excess of $904,714 to them related to the patients at issue in this First Amended Complaint.

## II.     THE PARTIES

### A.     PLAINTIFFS

6.     Liberty Mutual Fire Insurance Company is a company duly organized and existing under the laws of the State of Wisconsin.

7.     LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois are companies duly organized under the laws of the State of Illinois.

8. Liberty Mutual Fire Insurance Company, LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois have their respective principal places of business in Boston, Massachusetts.

9. At all times relevant to the allegations contained in this First Amended Complaint, the plaintiffs were authorized to conduct business in the State of Michigan.

B. **DEFENDANTS**

1. **Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab**

10. Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab ("Relief") is incorporated under the laws of the State of Michigan.

11. Relief is owned by Mohamed Cheikh ("Cheikh") and Ali Merhi ("Merhi").

12. At all relevant times, Relief was controlled by Cheikh, Merhi, NextGen Pain Associates and Rehabilitation LLC ("NextGen"), Five Star Comfort Care LLC ("Five Star"), Orthopedic Medical Supplies 1, Ltd. ("Orthopedic Medical"), United Transportation 1 Inc. ("United Transportation"), City 2 City Transportation, LLC ("City 2 City"), Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun ("Baydoun"), and Nura Kutob ("Kutob").

13. Relief's principal place of business is located in Dearborn, Michigan.

4

14.    Relief billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 1.

### 2.    Westborn Physical Therapy, LLC

15.    Westborn Physical Therapy, LLC ("Westborn") is a limited liability company organized under the laws of the State of Michigan.

16.    Westborn is owned by Steven Awada.

17.    At all relevant times, Westborn was controlled by Steven Awada, NextGen, Steve's Medical Supply, Inc. ("Steve's Medical"), City 2 City, Cheikh, Baydoun, and Kutob.

18.    Westborn's principal place of business is located in Dearborn, Michigan.

19.    Westborn billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 2.

### 3.    First National Rehab, Inc.

20.    First National Rehab, Inc. ("First National") is incorporated under the laws of the State of Michigan.

21.    First National is owned by Hussien Awada.

22.    At all relevant times, First National was controlled by Vivid Rehab Inc ("Vivid"), Hussien Awada, Steven Awada, and Lawrence Atat ("Atat").

23.    First National's principal place of business is located in Dearborn, Michigan.

24.    First National billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 3.

### 4.    First Step Rehab, Inc.

25.    First Step Rehab, Inc. ("First Step") is incorporated under the laws of the State of Michigan.

26.    First Step is owned by Imad Awada.

27.    At all relevant times, First Step was controlled by Imad Awada, NextGen, United Transportation, Steven Awada, Ameer Awada, Mahmoud Awada, Baydoun, and Kutob.

28.    First Step's principal place of business is located in Detroit, Michigan.

29.    First Step billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all),

and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 4.

### 5.   **Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab**

30.    Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab ("Doc PT") is a limited liability company organized under the laws of the State of Michigan.

31.    Doc PT is owned by Magdalene Awada.

32.    At all relevant times, Doc PT was controlled by Magdalene Awada, NextGen, United Transportation, Steven Awada, Ameer Awada, Mahmoud Awada, Baydoun, and Kutob.

33.    Doc PT's principal place of business is located in Dearborn, Michigan.

34.    Doc PT billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 5.

### 6.   **Vivid Rehab Inc**

35.    Vivid Rehab Inc is incorporated under the laws of the State of Michigan.

36.    Vivid is owned by Atat.

37.    At all relevant times, Vivid was controlled by Atat, First National, Steven Awada, and Hussien Awada.

38.    Vivid's principal place of business is located in Dearborn, Michigan.

39.    Vivid billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 6.

### 7.    NextGen Pain Associates and Rehabilitation, LLC

40.    NextGen Pain Associates and Rehabilitation, LLC is a limited liability company organized under the laws of the State of Michigan.

41.    NextGen is owned by layperson Baydoun.

42.    At all relevant times, NextGen was controlled by Baydoun, Kutob, Relief, Westborn, First Step, Doc PT, Five Star, Orthopedic Medical, Steve's Medical, City 2 City, Joseph Awada, Steven Awada, Imad Awada, Magdalene Awada, Ameer Awada, Cheikh, and Merhi.

43.    NextGen's principal place of business is located in Dearborn, Michigan.

44.    NextGen billed Liberty Mutual for treatment that was not actually rendered, was medically unnecessary (to the extent treatment was rendered at all),

and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 7.

### 8.   Five Star Comfort Care LLC

45.    Five Star Comfort Care LLC ("Five Star") is a limited liability company organized under the laws of the State of Michigan.

46.    Five Star is owned by Joseph Awada and Merhi.

47.    At all relevant times, Five Star was controlled by Joseph Awada, Merhi, Steven Awada, NextGen, Baydoun, and Kutob.

48.    Five Star's principal place of business is located in Dearborn Heights, Michigan.

49.    Five Star billed Liberty Mutual for home health services that were not actually rendered, were medically unnecessary (to the extent services were rendered at all), and were unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 8.

### 9.   Steve's Medical Supply, Inc.

50.    Steve's Medical Supply, Inc. is incorporated under the laws of the State of Michigan.

51.    Steve's Medical is owned by Steven Awada.

52.    At all relevant times, Steve's Medical was controlled by Steven Awada, Westborn, NextGen, Baydoun, and Kutob.

53.     Steve's Medical's principal place of business is located in Dearborn, Michigan.

54.     Steve's Medical billed Liberty Mutual for DME that was not actually issued, was medically unnecessary (to the extent DME was issued at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 9.

## 10.     **Orthopedic Medical Supplies 1, Ltd.**

55.     Orthopedic Medical Supplies 1, Ltd. is incorporated under the laws of the State of Michigan.

56.     Orthopedic Medical is owned by Steven Awada and Ameer Awada.

57.     At all relevant times, Orthopedic Medical was controlled by Ameer Awada, Steven Awada, Relief, NextGen, Joseph Awada, Merhi, Cheikh, Baydoun, and Kutob.

58.     Orthopedic Medical's principal place of business is located in Dearborn, Michigan.

59.     Orthopedic Medical billed Liberty Mutual for DME that was not actually issued, was medically unnecessary (to the extent DME was issued at all), and was unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 10.

## 11. United Transportation 1, Inc.

60.     United Transportation 1, Inc. ("United Transportation") is incorporated

under the laws of the State of Michigan.

61.     United Transportation is owned by Steven Awada, Ameer Awada, and

Mahmoud Awada.

62.     At all relevant times, United Transportation was controlled by Steven

Awada, Ameer Awada, Mahmoud Awada, Relief, First Step, Doc PT, Joseph

Awada, Imad Awada, Magdalene Awada, Merhi, and Cheikh.

63.     United Transportation's principal place of business is located in

Dearborn, Michigan.

64.     United Transportation billed Liberty Mutual for medical transportation

services that were not actually provided, were medically unnecessary (to the extent

they were provided at all) and were unlawful in relation to several Liberty Mutual

insureds, including the patients set out in Exhibit 11.

## 12. City 2 City Transportation, LLC

65.     City 2 City Transportation, LLC ("City 2 City") is a limited liability

company organized under the laws of the State of Michigan.

66.     City 2 City is owned by Cheikh.

67.     At all relevant times, City 2 City was controlled by Cheikh, Relief,

Westborn, NextGen, Joseph Awada, Steven Awada, Merhi, Baydoun, and Kutob.

11

68.     City 2 City's principal place of business is located in Dearborn, Michigan.

69.     City 2 City billed Liberty Mutual for medical transportation services that were not actually provided, were medically unnecessary (to the extent they were provided at all) and were unlawful in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 12.

### 13.     Steven Awada

70.     Steven Awada is a resident and citizen of the State of Michigan.

71.     At all times relevant to this First Amended Complaint, Steven Awada owned Westborn, Steve's Medical, and United Transportation.

72.     At all times relevant to this First Amended Complaint, Steven Awada controlled Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2 City.

### 14.     Joseph Awada

73.     Joseph Awada is a resident and citizen of the State of Michigan.

74.     At all times relevant to this First Amended Complaint, Joseph Awada was an owner of Five Star.

75.     At all times relevant to this First Amended Complaint, Joseph Awada controlled Relief, NextGen, Five Star, Orthopedic Medical, United Transportation, and City 2 City.

### 15. __Hussien Awada__

76.    Hussien Awada is a resident and citizen of the State of Florida.

77.    At all times relevant to this First Amended Complaint, Hussien Awada owned First National.

78.    At all times relevant to this First Amended Complaint, Hussien Awada controlled First National and Vivid.

### 16. __Imad Awada__

79.    Imad Awada is a resident and citizen of the State of Michigan.

80.    At all times relevant to this First Amended Complaint, Imad Awada owned First Step.

81.    At all times relevant to this First Amended Complaint, Imad Awada controlled First Step, NextGen, and United Transportation.

### 17. __Magdalene Awada__

82.    Magdalene Awada is a resident and citizen of the State of Michigan.

83.    At all times relevant to this First Amended Complaint, Magdalene Awada owned Doc PT.

84.    At all times relevant to this First Amended Complaint, Magdalene Awada controlled Doc PT, NextGen, and United Transportation.

### 18. __Ameer Awada__

85.    Ameer Awada is a resident and citizen of the State of Michigan.

86.     At all times relevant to this First Amended Complaint, Ameer Awada owned Orthopedic Medical and United Transportation.

87.     At all times relevant to this First Amended Complaint, Ameer Awada controlled Relief, First Step, Doc PT, NextGen, Orthopedic Medical, and United Transportation.

### 19.   **Mahmoud Awada**

88.     Mahmoud Awada is a resident and citizen of the State of Michigan.

89.     At all times relevant to this First Amended Complaint, Mahmoud Awada owned United Transportation.

90.     At all times relevant to this First Amended Complaint, Mahmoud Awada controlled Relief, First Step, Doc PT, and United Transportation.

### 20.   **Ali Merhi**

91.     Merhi is a resident and citizen of the State of Michigan.

92.     At all times relevant to this First Amended Complaint, Merhi owned Relief and Five Star.

93.     At all times relevant to this First Amended Complaint, Merhi controlled Relief, NextGen, Five Star, Orthopedic Medical, United Transportation, and City 2 City.

### 21.   **Mohamed Cheikh**

94.     Cheikh is a resident and citizen of the State of Michigan.

95.     At all times relevant to this First Amended Complaint, Cheikh owned Relief and City 2 City.

96.     At all times relevant to this First Amended Complaint, Cheikh controlled Relief, Westborn, NextGen, Orthopedic Medical, United Transportation, and City 2 City.

### 22.     **Lawrence Atat**

97.     Atat is a resident and citizen of the State of Michigan.

98.     At all times relevant to this First Amended Complaint, Atat owned Vivid.

99.     At all times relevant to this First Amended Complaint, Atat controlled First National and Vivid.

### 23.     **Abdul Baydoun**

100.    Baydoun is a resident and citizen of the State of Michigan.

101.    At all times relevant to this First Amended Complaint, Baydoun owned NextGen.

102.    At all times relevant to this First Amended Complaint, Baydoun controlled NextGen, including holding himself out as NextGen's Chief Executive Officer.

103.    Baydoun made decisions on behalf of NextGen, including prescriptions to be issued to patients, treatment to coerce patients to undergo, and hiring and

managing physicians at NextGen, even though Baydoun is a layperson and not a healthcare professional.

104.   Baydoun also entered into contracts on behalf of NextGen and made decisions about which claims to submit to Liberty Mutual and which claims to litigate.

105.   At all times relevant to this First Amended Complaint, Baydoun controlled Relief, Westborn, First Step, Doc PT, NextGen, Five Star, Steve's Medical, Orthopedic Medical, and City 2 City.

### 24.   **Nura Kutob**

106.   Kutob is a resident and citizen of the State of Michigan.

107.   At all times relevant to this First Amended Complaint, Kutob controlled NextGen.

108.   Kutob (a layperson and not a healthcare professional) controlled NextGen's day-to-day operations, as confirmed by her husband Baydoun.

109.   Kutob also directed which patients physicians at NextGen saw each day and influenced the treatment allegedly rendered by and at NextGen, even though she is a layperson.

110.   At all times relevant to this First Amended Complaint, Kutob controlled Relief, Westborn, First Step, Doc PT, NextGen, Five Star, Steve's Medical, Orthopedic Medical, and City 2 City.

16

## III.    JURISDICTION AND VENUE

111.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961 *et seq*. because they arise under the laws of the United States.

112.    Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000 against each defendant and because it is between citizens of different states.

113.    Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

114.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts at issue in this First Amended Complaint were carried out within the Eastern District of Michigan.

## IV.    THE DEFENDANTS' FRAUDULENT SCHEME

115.    Defendants Relief, Westborn, First National, First Step, Doc PT, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2 City are each owned by members of the Awada family.

116.    Although each of the Awada-owned entities purports to maintain separate legal ownership, each is operated in the same manner and each is used in furtherance of a common scheme to submit fraudulent bills to Liberty Mutual for payment pursuant to Michigan's No-Fault Act.

17

117.   For example, each of the defendant physical therapy clinics billed Liberty Mutual for nearly identical courses of therapy using the same template forms.

118.   Each of the defendant physical therapy clinics also submitted nearly identical charges for each service and modality allegedly performed, often prepared by the same biller.

119.   Patients of the defendant physical therapy clinics were selected by the layperson owners and controllers of defendant Five Star to be set up for purported attendant care services, which were nothing more than a means for the defendants to pay patients and their friends and relatives a $10 per hour kickback while charging Liberty Mutual $40 per hour.

120.   Patients of the Awadas' physical therapy clinics were allegedly driven by the same transportation companies, including defendants United Transportation and City 2 City, and obtained their prescriptions for physical therapy from the same physicians, including defendant NextGen.

121.   When Liberty Mutual presented to the defendant physical therapy clinics to perform inspections, the clinics called one another to provide advance warning that an inspection may be forthcoming.

122.   In other words, despite their separate legal identities, each of the defendants operated as part of the same scheme to defraud Liberty Mutual detailed herein.

123.   Several patients have testified about the close relationship between the defendants.

124.   Patient A.B. (Claim No. 363898040001)[1], who was purportedly treated by both Relief and NextGen, testified that the clinics work together, that Relief sent all of its patients to NextGen, and that she was told by a representative of Relief that NextGen "is the only place they trust."

125.   When defendant First National closed its clinic location in or about January 2018, each of its patients immediately began nearly identical treatment at defendant Vivid, which opened next door.

126.   Indeed, patient Z.C. (Claim No. 034546099) testified that she was not even aware that First National and Vivid were separate entities, as her treatment had continued unchanged with the same physical therapist.

127.   Each of the individual defendants are laypersons who are not trained or licensed to provide medical diagnoses or care.

---

[1] To protect the confidentiality of its insureds, Liberty Mutual refers to them herein by initials and claim number.

128.   Each of the individual defendants nevertheless directed purported medical treatment and services for the patients at issue herein in order to generate the maximum amount of claims to submit to Liberty Mutual for payment.

## V.   BILLING FOR SERVICES NOT RENDERED

129.   The defendants submitted bills to Liberty Mutual seeking payment for treatment and services that were never rendered to patients at issue herein.

130.   Many of the bills submitted to Liberty Mutual by the defendants for services not actually performed were a result of standard practices that were repeated for numerous patients at issue herein.

### A.   BILLING FOR TIMED SERVICES NOT PERFORMED

131.   As discussed further below, the defendant physical therapy clinics billed for nearly identical courses of treatment for almost every patient, regardless of their age, injury, and medical history.

132.   The majority of the treatments and modalities used in these protocol treatments were timed services for which each unit billed to an insurer represents fifteen (15) minutes of treatment.

133.   Medical coding rules require a minimum of eight (8) minutes of treatment be performed in order to bill for a unit of a timed service.

134.   To properly bill for multiple units of a timed service, a provider must perform the full fifteen (15) minutes of service for the first (and any subsequent) unit, and at least eight (8) minutes of service for the second (or subsequent) unit.

135.   Westborn, First National, Relief, and First Rehab failed to consistently record the amount of time purportedly spent performing each timed service.

136.   Steven Awada has testified that no record of the time spent performing treatment is kept by Westborn, and that total treatment time is "approximately a half hour."

137.   According to Steven Awada, it is Westborn's policy to bill for one unit of treatment per body part, regardless of the length of time treatment was actually performed.

138.   Patient S.J. (Claim No. 035723234) testified that when she performed exercises on equipment at defendant Relief, she set the timers herself.

139.   Relief could not have confirmed that the bills it submitted to Liberty Mutual relative to S.J. accurately reflected the treatment performed.

140.   It is improper to submit bills for timed services when the time spent for each treatment is not accurately recorded, and all claims by the defendant physical therapy clinics for timed services that were not actually timed were fraudulent.

141.   The defendant physical therapy clinics' failure to measure and record the time spent performing treatment was to mask the fact that they did not perform treatment for the length of time required to bill Liberty Mutual.

142.   Several patients of the defendants have reported to Liberty Mutual that their treatments did not last long enough to support the number of units billed by the defendants.

143.   Liberty Mutual has also confirmed that patients were not present at the defendant physical therapy clinics for long enough to have undergone the treatment billed.

144.   When the defendant physical therapy clinics did record purported time spent performing services, they routinely claimed that the exact same amount of time was spent performing treatment over multiple days and weeks, even when the specific exercises allegedly performed changed throughout.

145.   Defendants Relief and First Step fraudulently submitted hundreds of bills to Liberty Mutual representing that treatment was performed for longer than it actually was by assigning the minimum eight (8) minutes of treatment to different body parts on each date of service.

146.   For example, Relief and First Step routinely billed Liberty Mutual for performing two (2) units of therapeutic exercises to patients, which requires at least

twenty-three (23) minutes of treatment, when at most only sixteen (16) minutes of treatment was actually performed.

147.   Relief's and First Step's practice of separating treatment between body parts to maximize the number of units billed to Liberty Mutual was not only improper, it misrepresented treatment that was not actually assigned to a particular body part.

148.   For example, on nearly every date of service, Relief's and First Step's therapeutic exercises purportedly included activities such as riding a recumbent bike and walking on a treadmill.

149.   Such exercises are not specific to just one region of a patient's body, and Relief's and First Step's manipulation of their records to separate the treatment into the maximum number of eight-minute units constituted billing for services not rendered.

## B.   BILLING FOR ONE-ON-ONE SUPERVISION NOT PERFORMED

150.   Much of the treatment billed by the defendant physical therapy clinics required direct one-on-one supervision by a qualified healthcare professional for the entirety of treatment, including all therapeutic exercises, neuromuscular reeducation, gait training, massage, manual therapy, and therapeutic activities, and some electrical stimulation.

151.   Several patients at issue herein have reported to Liberty Mutual that treatments billed by the defendant physical therapy clinics were not actually supervised by a healthcare professional.

152.   For example, patient L.P. (Claim No. 664329434014) reported to Liberty Mutual that Doc PT physical therapists were not present when he performed therapeutic exercises on a stationary bike.

153.   Indeed, L.P. reported that he used his time on the bike to eat lunch, which was provided by Doc PT as a perk for presenting for treatment.

### C.   BILLING FOR CONSTANT ATTENDANCE SERVICES NOT PERFORMED

154.   The defendant physical therapy clinics regularly billed Liberty Mutual for services that require constant, one-on-one oversight, including ultrasound and certain electrical stimulation treatment.

155.   Patients for whom the defendants submitted such bills have reported that their treatment was not actually performed with constant attendance, but instead was rendered with multiple patients at the same time, without a therapist present, or both.

156.   Defendant Relief regularly billed Liberty Mutual for purported electrical stimulation using Current Procedural Terminology ("CPT") Code[2] 97032,

---

[2] CPT Codes are published annually by the American Medical Association to establish standards and facilitate the efficient processing of healthcare charges by insurance carriers and other private and governmental healthcare payors.

which requires direct, one-on-one patient contact throughout the entirety of treatment.

157.   Patient S.J. (Claim No. 035723234) testified that when electrical stimulation was performed at Relief, the therapist would use the time to attend to a different patient.

158.   Electronic stimulation that is unattended must be billed using CPT Code 97014.

159.   Steven Awada has testified that Westborn does not bill differently for attended and unattended electrical stimulation, and that it is his position that it is up to insurers to "decode" Westborn's bills themselves.

### D.   <u>BILLING MULTIPLE TIMES FOR THE SAME SERVICE</u>

160.   Defendants Relief and First Step also routinely billed Liberty Mutual for multiple units of treatments that are untimed in a single day.

161.   Physical therapy services that are untimed are only permitted to be billed once per date of service.

162.   First Step billed Liberty Mutual for allegedly applying hot packs to patients more than once on numerous dates of service.  *See* Exhibit 4.

163.   Relief routinely billed Liberty Mutual for allegedly performing multiple units of unattended electrical stimulation on patients on the same date of service.  *See* Exhibit 1.

164.    Submission of multiple claims for performing the same service on the same date when coding rules prohibit more than one claim constitutes billing for services not rendered.

### E.    SPECIFIC EXAMPLES OF BILLING FOR SERVICES NOT RENDERED

165.    In addition to the fraudulent practices detailed above, each of which resulted in numerous claims submitted to Liberty Mutual for payment for services not actually performed, the defendants mailed fraudulent bills and medical records relative to each of the following representative exemplar patients:

- Patient D.T. (Claim No. 942135536002) was purportedly issued pulsed electromagnetic field therapy ("PEMF") devices by NextGen for her lumbar spine on August 17, 2017 and her cervical spine on September 14, 2017.  NextGen billed Liberty Mutual $17,750 for each device, for a total of $35,500.  D.T. was just fourteen (14) years old at the time, and use of these PEMF devices was expressly contraindicated by instructions provided to NextGen by the manufacturer.  Each of the devices was allegedly ordered by podiatrist Bruce Kallou, D.P.M. ("Kallou"), who had no training or authority to provide any treatment to D.T.'s spine.  D.T. was shown a photograph of Kallou during a deposition and testified that she had never seen him before.  Liberty Mutual also obtained documentation of all sales of PEMF devices to NextGen, and the first cervical spine device was not sold to NextGen until September 29, 2017.  NextGen did not actually provide D.T. with the second PEMF device for which it billed Liberty Mutual $17,750, because it did not actually have the device it claims to have issued.  The president of the PEMF device manufacturer confirmed in sworn testimony that NextGen was never sold a cervical device prior to September 29, 2017.

- Patient J.B. (Claim No. 766746086002) was involved in an alleged motor vehicle accident on January 31, 2018.  After being illegally solicited by Joseph Awada, J.B. was prescribed an extensive course of physical therapy, which was allegedly performed by defendant Relief, and up to eighteen (18) hours per day of attendant care, which was allegedly

26

performed by a friend of J.B.'s who was hired by defendant Five Star. J.B. was also purportedly disabled from driving and transportation services were allegedly provided by defendant United Transportation. During the time J.B. was allegedly receiving this extensive therapy, attendant care, and transportation, he was observed performing numerous tasks and errands by himself, including driving himself more than 145 miles to various businesses and residences on March 25, 2018. Five Star billed Liberty Mutual for sixteen (16) hours of attendant care on March 25, 2018 that could not have actually been performed. On March 26, 2018, United Transportation billed Liberty Mutual for allegedly transporting J.B. from his home to Relief, but surveillance was conducted at J.B.'s home for the entire day on March 26, 2018 and no transportation services were observed. On April 10, 2018, J.B. was observed arriving at Relief at 11:50 a.m. and departing at 12:39 p.m., for a total of forty-nine (49) minutes at the clinic. Relief submitted bills to Liberty Mutual claiming to have performed 62 minutes of therapy to J.B. on that date.

- Patient C.J. (Claim No. 766746086002) was observed entering Relief at 11:50 a.m. and leaving at 12:39 p.m. on April 10, 2018, for a total of forty-nine (49) minutes at the clinic. Relief submitted bills to Liberty Mutual claiming to have performed 70 minutes of therapy to C.J. on that date.

- Patient A.B. (Claim No. 363898040001) testified that she only received electrical stimulation on three (3) occasions at defendant Relief, and thereafter declined the treatment because it made her uncomfortable. A.B. also denied ever receiving ultrasound treatment. Relief billed Liberty Mutual for purported electrical stimulation on at least twenty-two (22) dates of service and ultrasound on at least sixteen (16) dates of service. A.B. also explained that during her last week of treatment she received only mechanical massage, but Relief billed Liberty Mutual for electrical stimulation, ultrasound, hot packs, and therapeutic exercises during that time period. Finally, A.B. specifically denied presenting for treatment at all at Relief on December 12, 2017 and December 27, 2017, both dates for which Relief submitted bills to Liberty Mutual for purported treatment rendered to A.B. NextGen also submitted bills to Liberty Mutual relative to A.B., including bills totaling $35,500 for PEMF devices allegedly issued. A.B. testified that she never received any medical equipment from NextGen.

- Patient B.S. (Claim No. 033962169) was allegedly involved in a motor vehicle accident on June 14, 2016.  B.S. reported to a medical examiner that his treatment at defendant First National began approximately two (2) months after his alleged motor vehicle accident.  However, First National billed Liberty Mutual for treatment beginning on June 30, 2016, approximately six (6) weeks earlier than B.S. reported beginning therapy.  First National did not create the bills for the purported treatment of B.S. from June 30, 2016 through July 28, 2016 until August 1, 2016.  Moreover, for multiple dates of service, First National recorded that it only performed seven (7) minutes of ultrasound treatment, but it nevertheless submitted bills for reimbursement using CPT Codes that require at least eight (8) minutes of treatment to be compensable.

- Patient Z.H. (Claim No. 030003475) reported to a medical examiner that she rarely performed physical exercise during her treatments at defendant Relief.  However, Relief billed Liberty Mutual for allegedly performing therapeutic exercises on 208 of 212 dates of service relative to Z.H.  On August 19, 2014, Z.H. was observed being transported to Relief by her husband.  City 2 City submitted a bill to Liberty Mutual falsely claiming that it transported Z.H. to Relief on that date.

- Defendant NextGen billed Liberty Mutual for an examination allegedly performed by podiatrist Kallou of patient S.J. (Claim No. 035723234) on August 17, 2017, and for a urine drug test purportedly ordered by Kallou.  Kallou testified that he did not examine S.J. on August 17, 2017, and had not even started working for NextGen as of that date.

- Defendant First Step claimed to have performed exactly thirty (30) minutes of therapeutic exercise on patient L.G. (Claim No. 945633066051) on the majority of dates for which it recorded the time of services performed.  Despite performing treatment only for a time sufficient to bill Liberty Mutual for two (2) units of therapeutic exercise, First Step billed Liberty Mutual for three (3) units of therapeutic exercise on multiple dates, including September 20, 23, 25, and 27, 2013, which each required at least thirty-eight (38) minutes of treatment to be compensable as billed.

- Defendant Vivid billed Liberty Mutual for multiple units of manual therapy on patient I.S. (Claim No. 339621690001) despite performing less than twenty-three (23) minutes treatment, including on February 22, 2018,

28

March 6, 13, 15, 19, and 29, 2018, April 5, 6, 10, 16, 17, 18, 25, and 26, 2018, May 2 and 8, 2018, and July 12, 2018.

166.   The defendants submitted fraudulent claims to Liberty Mutual relative to each of the above-referenced exemplar patients and categories of services that were not actually provided, and Liberty Mutual relied on such submissions in adjusting the claims.

167.   Liberty Mutual is not required to reimburse the defendants for services that were not actually rendered and is entitled to repayment for payments it was induced by make by the defendants' fraudulent submissions.

## VI.   IMPROPER KICKBACKS AND INDUCEMENTS

168.   The defendants incentivized patients to present for medically unnecessary treatment and services (if treatment and services were performed at all) by offering them illegal and improper inducements to do so.

169.   Most brazenly, several of the defendant physical therapy clinics offered patients cash payments in exchange for undergoing treatment.

170.   Patient A.B. (Claim No. 363898040001) testified that she was paid as much as $100 per visit for undergoing treatment at Relief.

171.   The compensation paid by Relief was expressly made to compensate A.B. for presenting for treatment: "I did get compensation for coming because I was in school so I had to take time out of being in school to come to the therapy place."

29

172.   The amount of money paid to A.B. was tied to the number of times she presented for treatment in a week; if she underwent three (3) days of treatment, she was paid $100.

173.   A.B. also witnessed other patients being paid in cash by Relief in exchange for treating with the clinic every time she was at the clinic.

174.   A.B. testified that the cash payments were handed to patients by employees of Relief.

175.   Other cash payments witnessed by A.B. were made directly by Joseph Awada:

> [Relief] was like a loan place too.  Like Joe [Awada] is the name of the person that's over the whole therapy place.  Like you can just go ask Joe for money.  Like say if you're behind on bills, I need $1,000, he'll give it to you.

176.   Upon information and belief, NextGen also utilized similar cash payments to induce treatments.

177.   Bank records obtained by Liberty Mutual from just one of NextGen's operating accounts evidence cash withdrawals totaling at least $115,175 over the course of approximately eleven (11) months from June 5, 2017 to May 17, 2018.

178.   This total amount was withdrawn in 199 separate transactions, 154 of which were for exactly $600.

179.   Many of these $600 withdrawals were made in close temporal proximity to one another, with as many as four (4) such withdrawals being made on the same date.

180.   NextGen, a medical clinic, did not have any valid expenses that required this amount of cash, and the bank records separately account payments made by NextGen for other costs, including physicians, staff, and supplies.

181.   Liberty Mutual has also obtained bank records from accounts owned by Baydoun and Kutob personally, and by other entities they own and control, all of which were used for very similar patterns and amounts of cash withdrawals.

182.   Five Star was also used by the defendants to pay and conceal inducements to patients by hiring their friends and family to allegedly perform attendant care services.

183.   Five Star "hired" patients' friends and family, none of whom were qualified or trained to perform attendant care services, and paid them $10 per hour for allegedly performing services that consisted mostly of routine housework.

184.   Patient S.J. (Claim No. 035723234) reported to Liberty Mutual that after initially not being prescribed attendant care by her physician, a representative at Relief told her that she or her son could be paid for such services through Five Star.

31

185. Five Star "hired" S.J.'s son and submitted claims to Liberty Mutual for hundreds of hours of attendant care allegedly performed by him, but charged Liberty Mutual $40 per hour rather than the $10 per hour that was actually paid to S.J.'s son for the alleged services.

186. The defendants also paid kickbacks to physicians to induce orders for treatment and testing that was medically unnecessary.

187. For example, podiatrist Kallou testified that his contract with NextGen included terms whereby his compensation would increase if he referred patients for MRIs.

188. Treatment and testing that requires financial or other inducement to order or undergo is medically unnecessary, and all bills mailed to Liberty Mutual by the defendants for such treatment and testing were fraudulent.

## VII.  BILLING FOR UNLAWFUL TREATMENT

189. The defendants violated several Michigan laws and regulations in their effort to bill Liberty Mutual for as much treatment as possible.

190. NextGen, Steve's Medical, and Orthopedic Medical routinely billed Liberty Mutual for purportedly issuing DME to patients at issue herein.

191. In order to legally issue DME in Michigan, a provider must obtain a license from the Michigan Board of Pharmacy.

192.    NextGen, Steve's Medical, and Orthopedic Medical have never possessed a valid license to issue DME in the State of Michigan.

193.    NextGen also billed Liberty Mutual for tens of thousands of dollars of services purportedly ordered and performed by podiatrist Kallou.

194.    Podiatrists in Michigan are only authorized to provide treatment to the foot, ankle, and nails.  *See* Mich. Comp. Laws § 333.18001(1)(i).

195.    Purported services by Kallou billed by NextGen were to patients' spines and extremities, and were never limited to the body parts podiatrists are authorized by Michigan law to evaluate and treat.

196.    Kallou testified regarding defendant Baydoun's efforts to have him order services beyond his lawful authority:

> [Baydoun] was like, "Hey, can you just sign this?  We forgot to have the physician sign this script for a back brace."  I'm like, "No, it's not – I don't know who this is.  I don't know what this is."  And then he's like, "Oh, just go ahead."

197.    As discussed below, when Baydoun and NextGen were unable to compel Kallou to sign such prescriptions, they forged his signature.

198.    Liberty Mutual's investigation also revealed that defendant Relief only employed a physical therapist two (2) days per week for much of the period at issue herein.

199.   Relief billed Liberty Mutual for alleged services provided five (5) days per week, and on the other three (3) days the services were purportedly rendered by an assistant rather than a licensed physical therapist.  *See* Exhibit 1.

200.   Delegation of treatment to assistants by physical therapists is permitted only when strict conditions are followed, including continuous availability of the physical therapist while treatments are being performed and regular meetings between the physical therapist and assistant to evaluate performance and review records.  *See* Mich. Admin. Code r. 338.7138(2) and (3).

201.   Relief's physical therapist and physical therapy assistants could not have engaged in the required level of communication regarding treatment, as they were each present at the clinic on different days of the week.

202.   Upon information and belief, Relief's physical therapist, Aqib Siddiqui, was not continuously available on the three (3) days per week he was not present at Relief's clinic as he was performing treatment on behalf of other physical therapy clinic defendants at the same time.

203.   Treatment that was not properly supervised by a licensed physician was not performed as billed and is not compensable under the No-Fault Act.

## VIII.  <u>FORGED AND FALSIFIED RECORDS</u>

204.   In order to conceal their fraud and induce Liberty Mutual to make payments to which they were not entitled, the defendants routinely altered, forged, and falsified records submitted to support their bills.

205.   For example, defendant Westborn falsified records by having its physical therapist sign blank records, which were then filled in with representations of treatment that was not actually performed as billed or was not actually performed at all.  *See* Exhibit 13.

206.   Defendant Relief routinely mailed records to Liberty Mutual that were not created contemporaneously with the alleged treatment and were clearly false.

207.   For example, Relief submitted a record to Liberty Mutual purporting to document that on seven (7) separate dates of service from January 4, 2017 to January 31, 2017, patient N.T. (Claim No. 942135536002) underwent the exact same treatment consisting of electrical stimulation to her neck and lower back, hot packs to her lower back, massage to her lower back, ultrasound to her left shoulder, and therapeutic exercises to her left knee and left shoulder.  *See* Exhibit 14.

208.   On five (5) of the seven (7) dates of service that are purportedly documented by this record, Relief billed Liberty Mutual for different treatments to different body parts.  *See* Exhibit 1.

209.   The record created by Relief was falsified to create the appearance that the alleged treatment for the entire month of January 2017 was properly and accurately recorded when in fact there were no contemporaneous records created for the majority of the dates of service.

210.   NextGen submitted numerous records to Liberty Mutual representing that Kallou, who is a podiatrist, is actually a medical doctor in an attempt to induce payment for treatments performed to and ordered for patients' spines and extremities, which Kallou was not qualified to evaluate or treat.  *See* Exhibits 15 and 16.

211.   Podiatrist Kallou also testified that he discovered that NextGen was "writing prescriptions behind [his] back" under his name and "saying that [he was] physician of record for things that [he did not] know about."

212.   Kallou further testified that all prescriptions he wrote while at NextGen were handwritten on prescription pads with NextGen letterhead across the top.

213.   Kallou testified that he has seen several examples of prescriptions bearing his name on different forms that he never used while at NextGen.

214.   Kallou specifically identified records that were submitted by NextGen to Liberty Mutual relative to patient S.J. (Claim No. 035723234) as forgeries that he did not actually sign, including electronically-written prescriptions dated October

17, 2017 and November 16, 2017, both of which were after he stopped working at NextGen. *See* Exhibits 17 and 18.

215.  NextGen's records were easily altered and fabricated by the defendants, because the majority of the records submitted to Liberty Mutual were unsigned by the physician who purportedly performed the treatment.

216.  NextGen created medical records using software called Practice Fusion, which does not lock a medical record from revision until it is signed by the physician.

217.  The records submitted to Liberty Mutual by NextGen were rarely, if ever, signed by the physician who allegedly performed the evaluation or treatment documented thereon, meaning the records could be altered by anyone.

218.  Records submitted by NextGen disclose that Baydoun had access to these unsigned records, and several, like the example pictured below created relative to patient M.S. (Claim No. 775160756002), represented that Baydoun had performed the evaluation and treatment:

| FACILITY | ENCOUNTER | |
|---|---|---|
| **NextGen Pain Associates and Rehab** | **Office Visit** | |
| T  (313) 528-0181 | NOTE TYPE | SOAP Note |
| F  (313) 528-0182 | SEEN BY | abdul Baydoun |
| 13530 Michigan Ave | DATE | 12/21/2018 |
| Suite 310 | AGE AT DOS | 42 yrs |
| Dearborn, MI 48126 | Not signed | |

219.   The defendants' willingness to alter records submitted to Liberty Mutual is also illustrated by testimony given by patient A.B. (Claim No. 363898040001), who reviewed assignments of benefits submitted to Liberty Mutual by Relief that purport to bear her signature.

220.   A.B. testified that she did not sign the forms, and that Relief must have cut and pasted her signature from the clinic's sign-in sheet to the assignment of benefits forms.

221.   NextGen also fabricated records concerning its alleged treatment of A.B.

222.   NextGen billed Liberty Mutual for purportedly performing a comprehensive evaluation of A.B. on November 7, 2017, and specifically represented that a physical examination was performed.

223.   A.B. testified that her interaction with the NextGen physician was limited to a conversation, that no examination was performed, and that she did not get out of her chair during the interaction.

224.   The defendants also employed physicians and therapists with documented histories of committing healthcare fraud through forged records.

225.   Much of the alleged treatment billed to Liberty Mutual by First National was claimed to have been performed by a physical therapist named Mohammad Rafiq ("Rafiq").

226.   Rafiq was indicted on December 5, 2013 for his participation in a $7 million insurance fraud scheme that involved payment of kickbacks to physicians, signing medical documents falsely certifying medical need for treatment, and paying patients "in exchange for signing multiple blank physical therapy records."

227.   All of the bills submitted to Liberty Mutual for treatment allegedly performed by Rafiq were after his indictment.

228.   Rafiq pleaded guilty and was sentenced to 57 months in federal prison on April 5, 2016.

229.   Defendant Westborn employed a physical therapist, Mohammad Sadiq, who was indicted for and later pleaded guilty to his role in a healthcare fraud scheme involving paying kickbacks for patient information and using such information to submit charges for purported services that were unnecessary or not performed at all.

230.   Liberty Mutual relied on the bills and records submitted by the defendants to accurately and truthfully document the treatment performed.

231.   The false and fabricated bills and records mailed to Liberty Mutual by the defendants induced Liberty Mutual to pay benefits to which the defendants were not entitled, and Liberty Mutual is entitled to repayment for payments it was induced by make by the defendants' fraudulent submissions.

## IX.   UNLAWFUL SOLICITATION

232.   The defendants' fraudulent scheme required constant identification of and access to new alleged auto accident victims in order to generate bills for the medically unnecessary and excessive treatment that was purportedly performed.

233.   It is unlawful in Michigan to contact any person injured in a motor vehicle accident within 30 days of the accident with a direct solicitation to provide a service.  Mich. Comp. Laws § 750.410b.

234.   Unlawful solicitation leads to unnecessary, and therefore non-compensable, medical treatment, as patients who are in need of medical care do not require inducement to seek it.

235.   The defendants used numerous tactics to identify, recruit, and solicit patients that violated Michigan law.

236.   For example, Mike Awada, a relative of several of the defendants, identified persons involved in motor vehicle accidents and presented at their homes to coerce them to undergo treatment at the defendant clinics.

237.   Patient L.P. (Claim No. 664329434014), who allegedly underwent a course of treatment that continued for more than two (2) years at Doc PT, reported to Liberty Mutual that he was living at a homeless shelter when his treatment began.

238.   Doc PT sent a driver named Sam to pick up L.P. and approximately five (5) other patients to transport them to and from the clinic for alleged treatment.

239.   Numerous patients at issue herein have also provided Liberty Mutual with specific details of unlawful solicitation by the defendants and their associates.

240.   Patient A.B. (Claim No. 363898040001) testified that she was approached at the scene of her motor vehicle accident by a "recruiter" from Relief named June who directed her to the clinic for treatment.

241.   June, who was not a medical provider, stayed in contact with A.B. throughout her course of treatment and when A.B. told June that she was stopping treatment because it was not helping, he attempted to convince her to continue.

242.   June also attempted to contact A.B. prior to her deposition testimony, which A.B. believes was to implore her not to disclose his involvement.

243.   Patient C.J. (Claim No. 766746086002) reported to Liberty Mutual that following his alleged motor vehicle accident he was contacted by phone by Joseph Awada, who arranged for him to begin physical therapy at Relief and receive attendant care services performed by a friend that were billed by Five Star.

244.   This unlawful solicitation also resulted in unnecessary treatment billed relative to patient J.B. (Claim No. 76676080002), who was allegedly involved in the same motor vehicle accident and who underwent treatment simultaneously with C.J.

245.   The defendants' billing resulting from unlawfully solicited patients is unlawful, unreasonable, and unnecessary, and therefore is not reimbursable under

any Liberty Mutual insurance policy or applicable provisions of the Michigan No-Fault Act.

## X.   UNREASONABLE   AND   UNNECESSARY   FRAUDULENT TREATMENT

246.   The defendants' goal in treating patients was to perform as much treatment as possible, regardless of whether such treatment was reasonably necessary to patients' care, recovery, or rehabilitation, in order to generate bills to be submitted to Liberty Mutual.

247.   The defendants also sought to bolster the appearance of injury and, therefore, increase the amount of treatment for which insurers such as Liberty Mutual were billed.

248.   To maximize financial benefit, the defendants adhered to a predetermined protocol of treatment causing their patients to receive unnecessary, indiscriminate, and excessive treatment, as discussed more fully below.

249.   The defendants' treatment violated established standards of care in the medical community, as the vast majority of testing, diagnostics, referrals, and treatment were not indicated, redundant, excessive, and repeated without any objectively documented benefit to patients.

250.   The full extent and pattern of the defendants' misrepresentations regarding the lawfulness and necessity of the treatment they allegedly provided was not known to Liberty Mutual until it undertook the full investigation that culminated

in the filing of this action, including identification of the defendants' pattern of overtreatment.

251.   The unnecessary treatment rendered by the defendants, discussed more fully below, includes, but is not limited to, the treatment and patients set out in the charts annexed hereto at Exhibits 1 through 12.

252.   All of the claims submitted by the defendants to Liberty Mutual through the U.S. Mail seeking reimbursement for unnecessary, excessive, unlawful, and unreasonable treatment are fraudulent.

253.   None of the fraudulent claims submitted by the defendants are compensable under a Liberty Mutual insurance policy or applicable provisions of the Michigan No-Fault Act.

254.   Liberty Mutual is not required to compensate the defendants for treatment that was rendered based on a predetermined treatment protocol that was not patient-specific, and therefore medically unnecessary, and it is entitled to the return of money paid in reliance on the defendants' fraud.

255.   None of the above facts were known to Liberty Mutual until it undertook its investigation that resulted in the commencement of this action, and are not evident within the four corners of the medical records and bills submitted to Liberty Mutual by the defendants.

## A.   MEDICALLY UNNECESSARY PHYSICAL THERAPY

256.   Relief, Westborn, First National, First Step, Doc PT, and Vivid (collectively, the "physical therapy clinics") and their owners and managers billed Liberty Mutual for treatment that far exceeded applicable standards of care.

257.   Physical therapy must be objectively indicated; that is, a patient's subjective complaints of pain are not sufficient to justify more than a few weeks of physical therapy.

258.   In the vast majority of all motor vehicle accident cases, mild injuries will resolve themselves within a few weeks without any treatment whatsoever.

259.   Thus, the immediate resort to physical therapy using a predetermined protocol of excessive treatment was not related to the care, recovery, or rehabilitation of the patient, thus rendering such physical therapy medically unnecessary and not compensable under Liberty Mutual policies or applicable provisions of the Michigan No-Fault Act.

260.   Moreover, the defendants' immediate resort to extensive physical therapy may have caused harm to the patients at issue herein, as acute processes of injury were not allowed to dissipate naturally and follow the expected course of recovery.

261.   Physical therapy treatment must be prescribed by a licensed medical or osteopathic doctor if such treatment exceeds twenty-one (21) days or ten (10) visits. Mich. Comp. Laws. § 333.17820(1).

262.   Because the defendant physical therapy clinics frequently billed Liberty Mutual for alleged treatment that extended for many months or years, nearly all of the alleged treatment at issue herein required a prescription.

263.   Because the defendant physical therapy clinics frequently began billing Liberty Mutual for treatment within days or weeks of the alleged occurrence of accidents, physical therapy treatment of the patients at issue herein was frequently initiated before a prescription was written.

264.   In such instances, the defendant physical therapy clinics arranged for patients to obtain *pro forma* prescriptions from physicians associated with the clinics, including defendant NextGen, and treatment invariably continued using the same predetermined plan that had already been initiated.

265.   Prescriptions that were issued without a sufficient independent examination and medical determination, and which merely ordered the continuation of the course of treatment that had already been initiated by the defendant physical therapy clinics, are insufficient to establish medical necessity.

266.   NextGen, the defendant physical therapy clinics, and physicians associated therewith repeatedly made misrepresentations regarding the necessity of

physical therapy to perpetuate unnecessary and expensive treatment billed to Liberty Mutual.

267. These false statements, including the medically unnecessary prescriptions for physical therapy, were submitted to Liberty Mutual through the U.S. Mail along with demands for payment.

268. The following are representative examples of bills submitted to Liberty Mutual for physical therapy treatment that was unlawfully and improperly performed without a valid prescription:

- Patient J.B. (Claim No. 766746086002) allegedly began treatment at Relief on February 22, 2018. Relief represented to Liberty Mutual that J.B.'s physical therapy treatment had been ordered by a physician named Bachu Abraham, M.D. ("Abraham"). However, Abraham did not bill Liberty Mutual for performing an initial evaluation of J.B. until March 8, 2018, more than two (2) weeks after Relief claimed he ordered treatment.

- Patient I.S. (Claim No. 033962169) allegedly began treatment at Vivid on February 6, 2018, after he was transferred following the closure of First National. I.S.'s physical therapy was purportedly ordered by Usama Gabr, M.D. but not until April 11, 2018, at which point a four-week prescription was written that expired on May 9, 2019. Vivid continued to bill Liberty Mutual for purported physical therapy after the expiration of the prescription for nearly a month.

- Patient D.N. (Claim No. 034330242) allegedly began treatment at Doc PT on January 2, 2017. Doc PT mailed Liberty Mutual two (2) prescriptions for physical therapy, both purportedly signed by David Lewis, M.D., one of which was undated and the other dated January 25, 2017. David Lewis, M.D., who was indicted on December 4, 2018 on five (5) felony counts related to a massive healthcare fraud scheme that involved "referring or causing the referral of patients, or ordering or causing the ordering of testing, by other providers . . . where the services were medically unnecessary" (*see* United States v. David Lewis, 18-cr-20800-SJM-APP (E.D. Mich.)), never submitted

any bill or record to Liberty Mutual indicating that he actually performed an examination of D.N.

269.   Even when the defendant physical therapy clinics obtained seemingly valid prescriptions, they ignored the directions given by the prescribing physician in favor of their own excessive predetermined courses of care.

270.   For example, a prescription for physical therapy relative to patient A.B. (Claim No. 038349961) directed that treatment be performed to his entire spine, right hip, and right shoulder, and that traction be performed at every visit.

271.   Vivid billed Liberty Mutual for an extensive course of treatment allegedly provided to A.B. pursuant to its predetermined protocol, but never billed for traction or for treatment to his hip or shoulder.

272.   Similarly, when patient I.S. (Claim No. 033962169) finally obtained a prescription for the physical therapy Vivid was already billing, the physician directed that specific modalities be performed to specific body parts.

273.   Vivid ignored the direction provided by I.S.'s physician and instead billed Liberty Mutual for the full range of modalities included in its predetermined protocol and failed to treat purportedly injured body parts.

274.   Nearly every patient of the defendant physical therapy clinics was directed to undergo treatment consisting of numerous passive and active modalities at least three (3) times per week.

275.    Once patients were placed in the defendant physical therapy clinics' predetermined protocol, they were rarely, if ever, discharged from care.

276.    Defendant Relief submitted 10,452 claims to Liberty Mutual relative to the twenty-six (26) patients at issue herein who allegedly received treatment at the clinic, which amounts to an average of more than 402 treatments per patient.  *See* Exhibit 1.

277.    Defendant First Step submitted 6,749 claims to Liberty Mutual relative to the eight (8) patients at issue herein who allegedly received treatment at the clinic, which amounts to an average of more than 843 treatments per patient.  *See* Exhibit 4.

278.    Despite this incredible amount of purported treatment, First Step billed Liberty Mutual for performing just twenty-five (25) patient re-evaluations relative to just three (3) patients.  Id.

279.    Defendant Westborn submitted 4,941 claims to Liberty Mutual relative to the fourteen (14) patients at issue herein who allegedly received treatment at the clinic, which amounts to an average of 353 treatments per patient.  *See* Exhibit 2.

280.    Defendant First National submitted 5,433 claims to Liberty Mutual relative to the eighteen (18) patients at issue herein who allegedly received treatment at the clinic, which amounts to an average of more than 301 treatments per patient.  *See* Exhibit 3.

281.   Defendant Doc PT submitted 4,959 claims to Liberty Mutual relative to the thirteen (13) patients at issue herein who allegedly received treatment at the clinic, which amounts to an average of more than 381 treatments per patient.  *See* Exhibit 5.

282.   Defendant Vivid, which was just incorporated on February 2, 2018, submitted 916 claims to Liberty Mutual relative to just four (4) patients, three (3) of whom were allegedly former patients of defendant First National.  *See* Exhibit 6.

283.   Despite billing Liberty Mutual for an incredible amount of alleged physical therapy treatment, the defendant physical therapy clinics rarely performed re-evaluations of patients to confirm that they were receiving any benefit from this extraordinarily lengthy treatment.

284.   Indeed, many of the patients of the defendant physical therapy clinics failed to improve at all, or in many cases, got worse, despite purportedly undergoing treatment for many months or years.

285.   Specific examples of patients for whom the defendants submitted bills that far exceed standards of care include the following:

- Patient L.P. (Claim No. 808264407037) was allegedly involved in a motor vehicle accident on June 9, 2010.  On August 13, 2015, more than five (5) years after the alleged accident, L.P. presented to Doc PT, where he was placed on the clinic's excessive predetermined protocol of ultrasound, therapeutic exercises, massage, hot packs, manual therapy, electrical stimulation, neuromuscular re-education, therapeutic activities, and gait training.  Doc PT billed Liberty Mutual for this excessive and medically unnecessary treatment to L.P. for 400 different alleged dates of service over

49

forty-two (42) months. The majority of the prescriptions for L.P.'s therapy were purportedly written by Rajendra Bothra, M.D. and Ganiu Edu, M.D., who were both indicted in December 2018 for operating a healthcare fraud scheme that resulted in more than $464 million in improper claims. Doc PT never documented any objective improvement in L.P.'s condition, and L.P.'s subjective reports of pain were unchanged or worse after this extensive amount of treatment.

- Patient H.F. (Claim No. 314252510004) was allegedly involved in a motor vehicle accident on February 7, 2015. On February 10, 2015, H.F. presented to First National, where he was placed on the clinic's excessive predetermined protocol of hot packs, ultrasound, electrical stimulation, massage, therapeutic exercises, gait training, manual therapy, and therapeutic activities. First National billed Liberty Mutual for this excessive and medically unnecessary treatment to H.F. for 249 different alleged dates of treatment over the course of twenty-five (25) months. First National did not perform its first re-evaluation of H.F.'s treatment until December 19, 2015, after it had billed for over ten (10) months of treatment.

- Patient C.H. (Claim No. 319289480002) was allegedly involved in a motor vehicle accident on April 24, 2015. On January 26, 2016, C.H. presented to First Step, where he was placed on the clinic's excessive predetermined protocol of hot packs, ultrasound, electrical stimulation, massage, therapeutic exercises, gait training, manual therapy, therapeutic activities, and neuromuscular re-education. First National billed Liberty Mutual for this excessive and medically unnecessary treatment to C.H. for 268 different alleged dates of treatment over the course of two (2) years. First Step billed Liberty Mutual for just three (3) re-evaluations during this lengthy course of treatment, or approximately once every 86 dates of service.

- Patient C.H. (Claim No. 309280600002) was allegedly involved in a motor vehicle accident on October 27, 2014. On November 10, 2014, C.H. presented to Relief, where he was placed on the clinic's excessive predetermined protocol of hot packs, electrical stimulation, ultrasound, massage, therapeutic exercise, gait training, and manual therapy. Relief billed Liberty Mutual for this excessive and medically unnecessary treatment to C.H. for 287 different alleged dates of treatment over the course of twenty-eight (28) months. Relief's own records document that C.H.'s condition deteriorated rather than improved during this excessively lengthy course of treatment.

- Patient S.A. (Claim No. 776409094036-00002) was just eighteen (18) years old when she was allegedly involved in a motor vehicle accident on February 29, 2012. S.A. suffered a broken wrist and her physician repeatedly ordered physical therapy specifically to treat her wrist. On October 12, 2012, S.A. presented to Westborn where she was prescribed the clinic's predetermined treatment protocol that was designed to maximize charges for spinal treatments. Westborn billed Liberty Mutual for performing physical therapy for more than two and a half years, much of which ignored S.A.'s wrist entirely.

- Patient I.S. (Claim No. 339621690001) was allegedly involved in a motor vehicle accident on June 17, 2016. On September 19, 2016, I.S. presented to First National, where he was placed on the clinic's excessive predetermined protocol of hot packs, ultrasound, electrical stimulation, massage, manual therapy, therapeutic exercises, gait training, and therapeutic activities. First National billed Liberty Mutual for this excessive and medically unnecessary treatment to I.S. for 171 different alleged dates of treatment through January 31, 2018, a period of sixteen (16) months. Like other First National patients, I.S. then transferred care to Vivid, where the same excessive and predetermined treatment was billed for an additional 64 separate dates of service over the next seven (7) months. The records submitted to Liberty Mutual by Vivid indicate that I.S. was getting worse, rather than improving, with this extraordinary amount of treatment.

286. The defendant physical therapy clinics attempted to justify their excessive and unnecessary courses of treatment with examination findings that falsely inflated the severity of patients' conditions.

287. Patients were routinely documented to have muscle strength of just 3 out of 5 on the Oxford scale, which reflects a decrease in capacity so severe that patients would not have been able to resist any force stronger than gravity.

288.   Patients who are unable to resist forces stronger than gravity would not be able to perform the extensive courses of physical therapy ordered by the defendants, which almost always included purported therapeutic exercises.

289.   The defendants' false and inflated findings were often contradicted by other physicians who evaluated the patients at issue in close proximity to the defendants' alleged examinations.

290.   For example, patient Z.C. (Claim No. 034546099) was reported by First National to have just 3+/5 and 3/5 strength on July 13, 2017, in an attempt to justify the excessive course of physical therapy it ordered.

291.   On the same date, Z.C. was evaluated by a physician who noted that she had 5/5 strength in all relevant areas.

292.   The evaluations performed by the defendants were also woefully insufficient to reach a proper diagnosis.

293.   For example, patient A.B. (Claim No. 363898040001) testified that she had a history of back injury with continuing pain at the time of her alleged accident, but that Relief never asked her about her medical history or prior accidents during her evaluation or treatment.

294.   The lack of credibility of the defendants' evaluation findings is illustrated by Westborn's purported examination of patient H.S. (Claim No. 847085056039).

295.   Westborn's physical therapist reported that she performed an initial evaluation on July 13, 2017 that found that H.S. had diminishment of range of motion of his spine as severe as 25% of normal, and significant muscle strength loss in his lumbar spine rated at 3+/5.

296.   Defendant Steven Awada later testified that he discharged H.S. from treatment the following day because he did not believe that H.S. was actually injured and that he may have been part of a "sting."

297.   In other words, defendant Steven Awada himself did not ascribe any credibility to the purported objective findings made by Westborn's own physical therapist.

298.   Liberty Mutual is not required to pay the defendant physical therapy clinics for any of the unnecessary and excessive physical therapy treatment that was performed, if at all, based upon false and exaggerated examination findings and pursuant to their predetermined treatment protocol.

## B.   MEDICALLY UNNECESSARY PAIN MANAGEMENT TREATMENT

299.   The defendants used NextGen both to generate its own claims for unnecessary medical treatment and to order and prescribe unnecessary treatment, testing, services, and DME for which the other defendant entities submitted claims to Liberty Mutual.

300.    The   defendants   grossly   overutilized   physical   therapy,   disability certificates,   medications,   DME,   injection   procedures,   urine   drug   testing,   and surgeries in clear disregard for standards of care.

301.    In   order   to   prescribe   and   perform   its   predetermined   and   excessive course of services, NextGen purported to make nearly identical examination findings relative to the patients at issue herein.

302.    Indeed,   podiatrist   Kallou   testified   that   patients   he   encountered   at NextGen were coached to report their injuries in the same manner:

> every single patient coming in was pretty much the same story, and pretty much pointing at the same thing – everyone kind of seemed trained.  That was the, my biggest thing that started to develop as I, as I saw patients there.

303.    Many   patients   at   issue   herein   were   prescribed   NextGen's   extensive predetermined   protocol   of   treatment   without   any   physical   examination   being performed at all.

304.    NextGen's   purported   evaluations   almost   always   resulted   in   nearly identical "diagnoses" which were merely recitations of patients' alleged subjective complaints, such as "pain" in various extremities and joints.

305.    Despite failing to actually perform thorough examinations and issuing diagnoses that were generic and meaningless, NextGen almost invariably prescribed the exact same extensive treatment, including:

- Medications, often including narcotics;

- Physical therapy three (3) times per week for four (4) weeks;
- Total disability from work for four (4) weeks;
- Replacement household services for four (4) weeks;
- Attendant care for four (4) weeks;
- DME;
- MRIs; and
- Urine drug testing.

306. The predetermined and non-patient-specific nature of the courses of treatment ordered by NextGen are illustrated by the significant differences in age, injury history, and comorbidities of patients who were purportedly evaluated:

- Patient D.T. (Claim No. 942135536002) was just thirteen (13) years old on the date of her purported initial evaluation, but was nevertheless ordered disabled from both work and driving. Household replacement services, a course of physical therapy, and medications were also prescribed for D.T.

- Patient B.M. (Claim No. 035741302) was 60 years old diabetic on the date of her purported initial evaluation, and complained of pain only in her low back at the relatively minor intensity of 6 of 10 on the pain scale. B.M. was nevertheless prescribed a narcotic drug, three (3) MRIs, a PEMF device, and household services, in addition to being disabled from work and driving.

- Patient H.H. (Claim No. 928264525039) was twenty-five (25) years old on the date of his purported initial evaluation at NextGen, and was more than four (4) years removed from his alleged motor vehicle accident. During the intervening time period, H.H. had attempted numerous courses of treatment with other providers, none of which were addressed by NextGen. Instead, NextGen ordered a nearly identical course of therapy as prescribed to other patients at issue herein, including physical therapy, narcotic medications, and replacement services, and was ordered disabled from work and driving.

307.   Every patient who presented for pain management treatment at NextGen was repeatedly directed to return to the clinic for purported follow-up evaluations.

308.   Such follow-up examinations, if performed at all, nearly always found that patients' pain complaints remained the same, or in some cases increased, despite the extensive treatment ordered and performed by NextGen physicians.

309.   Despite the failure of NextGen's purported treatment and orders to improve the condition of its patients, the same predetermined courses of treatment were routinely re-ordered without any medical justification.

310.   As detailed below, the use of such predetermined treatment plans that were not based on any valid examinations or diagnoses were used by NextGen and its associates, including the defendant physical therapy clinics, to grossly overutilize physical therapy, medications, urine drug testing, DME, MRIs, and surgical procedures in disregard for applicable standards of care.

### 1.   <u>Medically Unnecessary Disability Certificates</u>

311.   Nearly universally, NextGen wrote disability certificates for unnecessary transportation services, attendant care, work disability, and replacement services, typically on a monthly basis, without regard to patients' individual and actual medical needs.

312.   By doing so, NextGen sought to bolster the (false) appearance of a more serious injury, and also to ensure patients returned for further visits with the defendants.

313.   As the disability certificates and replacement services prescriptions were written at one-month intervals, the patients were required to return to NextGen regularly for new forms, which falsely billed to Liberty Mutual as patient examinations.

314.   Considering the diversity of gender, race, age, medical necessity, and injuries sustained in the defendants' patient population, it is highly improbable that the vast majority of patients at issue in this First Amended Complaint were actually disabled.

315.   As an example of the defendants' indiscriminate disability certifications and prescriptions, notwithstanding the fact that Patient D.T. (Claim No. 942135536002) was only thirteen (13) years old at the time of her alleged motor vehicle accident, NextGen issued a disability certificate restricting her ability to drive a car even though legally she was not able to drive a car in the first place.

316.   In fact, the vast majority of patients at issue in this First Amended Complaint had no objective documented deficits that could substantiate ongoing disability.

317.   The disability certificates lasted for the duration of the patients' treatment by the defendants – beginning with the initial examination and continuing with the defendants' *pro forma* monthly renewal.

318.   The defendants' nearly universal provision of disability certificates was not rooted in reasonable medical care, but served instead to ensure the patients would appear at the defendant clinics for which the defendants billed Liberty Mutual.

### 2.   Medically Unnecessary DME

319.   Another integral part of the defendants' predetermined treatment protocol was to prescribe excessive and unnecessary items of DME.

320.   NextGen prescribed and NextGen, Steve's Medical, and Orthopedic Medical issued the same types of DME for each patient regardless of the patients' individual medical needs.

321.   Most patients of NextGen were prescribed one or more of a TENS unit, back braces, extremity braces, cold therapy devices, and PEMF devices during their treatment.

322.   Much of the DME billed for by the defendants, including back braces, was counter-productive to treatment of the type of myofascial pain complaints reported by the majority of patients at issue herein.

323.   DME was ordered and issued not based on medical necessity, but rather based on the amount of billing they would generate to Liberty Mutual.

324. Even when NextGen did not directly submit charges to Liberty Mutual for DME it ordered, the prescriptions it wrote were motivated by financial gain.

325. Liberty Mutual has obtained sworn testimony that the manufacturer of the cold compression devices routinely ordered by NextGen physicians unlawfully pays kickbacks to prescribers of thirty percent (30%) of the amount it collects from insurers.

326. DME that was prescribed and issued for the defendants' financial gain and not based on an individualized evaluation of medical necessity is fraudulent and non-compensable under Michigan's No-Fault Act.

### a. Medically Unnecessary PEMF Devices

327. NextGen physicians began prescribing PEMF devices only after Baydoun, a layperson, entered into an agreement with the PEMF device manufacturer to obtain a "trial" of devices to "see how the product was received in the personal injury marketplace."

328. From May 31, 2017 to September 29, 2017, Baydoun obtained 83 PEMF devices and corresponding replacement parts.

329. Not coincidentally, NextGen began billing Liberty Mutual for purportedly issuing PEMF devices on June 24, 2017.

330.   The PEMF manufacturer never had any communications with medical professionals at NextGen, and NextGen physicians did not understand how the devices were intended to work.

331.   No regulatory agency has approved the PEMF devices issued by NextGen as braces, and the president of the PEMF device manufacturer testified that the devices have "no bracing properties, but it's often confused as a brace because it looks like a brace."

332.   Nevertheless, NextGen (by and through Baydoun and Kutob) routinely referred to the PEMF devices as braces, directed patients to use them as though they were braces, and never explained why patients actually required pulsed electromagnetic field therapy.

333.   NextGen physicians also prescribed and issued PEMF devices to patients for whom they were expressly contraindicated and provided directions that were at odds with those supplied by the manufacturer.

334.   The Food and Drug Administration has determined that the PEMF devices allegedly issued by NextGen are not appropriate for patients under eighteen (18) years of age.

335.   NextGen nevertheless billed Liberty Mutual for two (2) separate PEMF devices that were allegedly issued to patient D.T. (Claim No. 942135536002), who

was just fourteen (14) years old, without any evaluation of the potential danger posed thereby.

336.   The PEMF devices allegedly issued by NextGen are designed to provide the electromagnetic field for exactly two (2) hours.

337.   NextGen physicians, having no comprehension of how the devices obtained by layperson Baydoun actually worked, frequently advised patients to use the devices for up to three (3) hours per day.

338.   NextGen also failed to provide patients with the proper replacement supplies to actually use the PEMF devices issued.

339.   In order to use the PEMF devices allegedly issued by NextGen, patients were required to insert disposable pods into the devices with each use.

340.   The president of the PEMF device manufacturer testified that the shipments ordered by Baydoun included a number of pods for each device that were intended to be sufficient for a full course of treatment with the device.

341.   After Baydoun, Kutob, and NextGen failed to remit payment to the PEMF device manufacturer, all PEMF devices and pods in NextGen's possession that were not issued to patients were retrieved from NextGen by the manufacturer.

342.   Just sixteen (16) of 83 (19.2%) of the PEMF devices ordered by Baydoun were retrieved, but 424 of 711 (59.6%) boxes of pods were retrieved.

343.   In other words, NextGen gave patients less than half of the pods that would be necessary for the PEMF devices to be used as intended by the manufacturer.

344.   The failure of NextGen to properly prescribe and issue the PEMF devices illustrates that DME was used only to increase the charges submitted to insurers and not to address the actual medical needs of patients at issue herein.

### b. Medically Unnecessary TENS Devices

345.   NextGen, Steve's Medical, and Orthopedic Medical billed Liberty Mutual for TENS devices relative to nearly every patient to whom they issued DME.

346.   Almost all of the patients who were allegedly issued TENS devices were already undergoing electrical stimulation as part of the extensive courses of treatment billed by the defendant physical therapy clinics.

347.   Issuing TENS devices to patients who were already undergoing such treatment, usually with limited or no benefit, is redundant and unnecessary.

348.   TENS devices are only indicated for the treatment of acute post-operative pain or for chronic pain, other than low back pain, that has persisted for greater than three (3) months and has failed to respond to other treatment attempts.

349.   NextGen, Steve's Medical, and Orthopedic Medical routinely issued TENS devices to patients in the days and weeks immediately following their alleged motor vehicle accidents, and before any other forms of therapy had been attempted.

350.   NextGen, Steve's Medial, and Orthopedic Medical also routinely issued TENS devices to patients with low back pain, an indication for which the devices have no proven medical efficacy.

351.   Patient responses to TENS therapy vary and are unpredictable, and it is therefore standard practice for a trial period to be conducted to confirm efficacy before a device is issued.

352.   The defendants never conducted trial periods before issuing the TENS devices at issue herein.

353.   Indeed, the defendants rarely, if ever, questioned patients about the TENS devises after they were issued, including to determine whether the devices were even being used at all.

354.    It is not possible that the devices issued by NextGen, Steve's Medical, and Orthopedic Medical were being used properly, or at all, because TENS devices require regular re-supplies of electrodes and lead wires.

355.   TENS devices are packaged with an initial supply of electrodes that can be expected to last for approximately one (1) month with regular use, if used and cleaned properly.

356.   NextGen, Steve's Medical, and Orthopedic Medical never provided patients with replacement electrodes or lead wires.

357.   Therefore, it is impossible that it was ever medically necessary for patients to be issued TENS devices, as such devices are intended only for long-term home use.

### 3.      Medically Unnecessary Urine Drug Testing

358.   NextGen routinely ordered and billed Liberty Mutual for alleged performance of urine drug testing that was medically unnecessary, unreasonable, excessive, and not performed in accordance with established standards of care.

359.   Urine drug testing is properly used in the context of pain management treatment when it is random and designed to ascertain whether patients are abusing or diverting potentially dangerous medications.

360.   Rather than using urine drug testing for medically necessary purposes, NextGen billed Liberty Mutual for urine drug tests allegedly performed for nearly every patient, at nearly every purported examination.  *See* Exhibit 7.

361.   The urine drug tests billed by NextGen were for purported presumptive/qualitative screening performed on urine specimens at NextGen's clinic.

362.   Until February 2018, NextGen billed Liberty Mutual for such tests using CPT Code 80306, which represents that tests were performed using a dipstick and interpreted with instrumented assistance.

363.   Beginning in February 2018, NextGen billed Liberty Mutual for tests using CPT Code 80305, which represents that tests were performed using a dipstick and interpreted using direct optical observation.

364.   Regardless of the method of interpretation, the urine drug tests billed by NextGen cost less than $10 to perform.

365.   NextGen invariably billed Liberty Mutual $1,404 (for CPT Code 80306) or $400 (for CPT Code 80305).  Id.

366.   The urine drug tests billed by NextGen were not medically necessary because they were performed indiscriminately at every appointment, they were performed on specimens provided by patients who were not prescribed medications susceptible to abuse or misuse, and the results were not used to guide patient care.

367.   For example, NextGen billed Liberty Mutual for purportedly examining patient P.B. (Claim No. 356219950004) on fourteen (14) separate dates from August 17, 2017 to December 11, 2018, and on all but one (1) date also submitted a charge for the alleged performance of a urine drug screen.

368.   Performing a urine drug test at every patient appointment negates the utility of the test as the patient is afforded the opportunity to prepare for and potentially adulterate his or her urine specimen.

369.   NextGen also billed Liberty Mutual for allegedly performing a urine drug test on a specimen provided by patient D.T. (Claim No. 942135536002), who

was thirteen (13) years old at the time and was not prescribed any narcotics or other potentially dangerous medications.

370.    Most egregiously, NextGen did not take any action when the urine drug tests it ordered and performed revealed that its patients were abusing or misusing the dangerous narcotic drugs it regularly prescribed.

371.    For example, patient A.T. (Claim No. 036026853) had a documented history of attempted suicide, including a drug overdose on July 17, 2017.

372.    NextGen billed Liberty Mutual for alleged performance of urine drug screens at every evaluation of A.T., but never recorded the results.

373.    On December 17, 2017, NextGen referred a urine specimen provided by A.T. for definitive/comprehensive testing at an outside laboratory.

374.    A.T.'s December 17, 2017 urine specimen tested positive for numerous dangerous drugs of abuse, including cocaine, fentanyl, Demerol, PCP, Xanax, ketamine, and oxazepam.

375.    Despite A.T.'s history of drug abuse and self-harm, and the extensive evidence of abuse of numerous substances provided by this urine drug test, NextGen never altered A.T.'s care, referred her for counseling, or even documented the evidence of drug abuse in its own patient chart.

376.   Instead, NextGen continued prescribing A.T. opiates in the face of this evidence of abuse, in a shocking violation of the standard of care for narcotic drug prescriptions.

377.   Incredibly, layperson defendant Steven Awada called Liberty Mutual on March 26, 2018, to attempt to have Liberty Mutual stop paying for urine drug screens of A.T. performed by NextGen, as he claimed they were unnecessary.

378.   Similarly, patient N.T. (Claim No. 942135536002) had a documented history of drug abuse, including using Xanax that was prescribed to her mother and testing positive for numerous unprescribed substances.

379.   NextGen made no reference to N.T.'s history of drug abuse, and instead prescribed her with the dangerous combination of Xanax (a benzodiazepine) and oxycodone 30mg (a dangerous and powerful narcotic).

380.   On March 13, 2017, NextGen ordered a urine drug test that was negative for all prescribed medications, including the Xanax and oxycodone.

381.   On May 24, 2017, NextGen ordered a urine drug test that was positive for illicit substances.

382.   These inconsistent results that evidenced drug abuse and misuse of the dangerous prescribed medications was never addressed by NextGen, and N.T.'s pharmacologic treatment continued unchanged.

383.   The lack of medical necessity of urine drug testing ordered and performed by NextGen is also evidenced by its referral of nearly every urine specimen to laboratories owned and operated by its associates for additional definitive/comprehensive testing.

384.   Definitive/comprehensive testing is only proper when presumptive/qualitative testing produces unexpected results.

385.   The vast majority of the presumptive/qualitative urine drug tests allegedly performed by NextGen produced results consistent with the reported prescribed medications.

386.   Even when presumptive/qualitative testing produces unexpected results, it is not proper to immediately refer the specimen for more extensive testing.

387.   Instead, the physician should discuss the unexpected results with the patient, and if the patient admits to drug misuse, further confirmatory testing is unnecessary.

388.   NextGen never discussed unexpected test results with patients as both the urine screens it performed and confirmatory tests it ordered were only intended to generate bills to Liberty Mutual.

389.   As discussed above, NextGen did not alter patient treatment even when presented with evidence of drug abuse or diversion, so referral of specimens with

abnormal results were also unnecessary as further confirmation of unexpected results was not used to guide patient care.

### 4.   **Medically Unnecessary Procedures**

390.   NextGen, Baydoun, and Kutob subjected patients at issue herein to medically unnecessary invasive procedures and surgeries for which they submitted outrageous and improperly billed charges, discussed *infra*.

391.   The performance of invasive procedures and surgeries must be based on adequate diagnoses and legitimate medical necessity.

392.   As detailed above, NextGen did not perform physical examinations sufficient to make any diagnoses sufficient to justify the performance of invasive procedures.

393.   The injections billed by NextGen had no relation to patients' actual medical needs.

394.   For example, NextGen rarely, if ever, performed trigger point injections despite routinely documenting trigger points and myofascial tenderness in NextGen's own records and in the records of the defendant physical therapy clinics.

395.   Instead, NextGen billed Liberty Mutual for injections that allowed it to seek higher reimbursement, both for the injection itself and for unnecessary ancillary charges, such as use of anesthesia and a surgical facility.

396.   NextGen routinely subjected its patients to epidural steroid injections despite patient reports of only axial back pain without radicular symptoms, which far exceeds the standard of care for treating such complaints.

397.   In order to multiply the charges submitted to Liberty Mutual by NextGen and its associates, the defendants also routinely subjected patients to anesthesia during injections, a risky practice that the American Society of Anesthesiologists has warned against as it is a major factor in the occurrence of inadvertent neural injury.

398.   NextGen also subjected patients to repeated injection procedures without evaluating the efficacy of previously-performed treatments.

399.   For example, NextGen billed Liberty Mutual for a sacroiliac ("SI") joint injection to patient B.M. (Claim No. 035741302) on April 10, 2018, despite no prior documentation of SI joint tenderness or positive SI joint maneuvers.

400.   Without evaluating the efficacy of this first injection, NextGen billed Liberty Mutual for a second SI joint injection just two (2) weeks later, on April 24, 2018.

401.   NextGen further endangered its patients by subjecting them to potent steroid injections in far greater numbers than are considered safe.

402.   NextGen also pressured patients to undergo surgical procedures that were not indicated and without first attempting conservative care.

403.   For example, patient N.T. (Claim No. 942135536002) was evaluated by NextGen surgeon Michael Donahue, M.D. on June 16, 2017, who documented non-specific pain complaints with non-anatomic motor findings and no dermatomal description of his alleged sensory examination.

404.   Moreover, N.T. had reported significant improvement following a cervical injection just weeks prior, which was not considered at this purported evaluation.

405.   Despite this clearly inadequate purported examination, NextGen scheduled N.T. for a cervical fusion surgery that was performed on June 30, 2017.

406.   The unsupported cervical fusion surgery was one of five (5) surgeries performed by NextGen on N.T. over just seven (7) months, all despite the patient exhibiting symptoms of myalgia that should have been treated conservatively and without surgery.

### C.   IMPROPER AND MEDICALLY UNNECESSARY ATTENDANT CARE

407.   The defendants' scheme also involved billing Liberty Mutual for alleged attendant care services that were medically unnecessary and unreasonable.

408.   Joseph Awada identified patients of the defendant physical therapy clinics to target for ostensible attendant care to be billed by Five Star.

409.   For example, Joseph Awada testified regarding patient N.T. (Claim No. 942135536002) that "[she] would have been a perfect one to put in [to Five Star]."

410.   Joseph Awada is a layperson who cannot determine whether attendant care is medically necessary.

411.   Indeed, Joseph Awada has testified that patients of Five Star were not selected based on medical need, but rather based on the willingness of insurance companies to pay claims for attendant care.

412.   Joseph Awada, Merhi, and Five Star facilitated the purported attendant care by obtaining prescriptions from their associates, including NextGen, Baydoun, and Kutob.

413.   Because Five Star's patients were selected by a layperson (Joseph Awada) and the purported attendant care was used only to generate bills to Liberty Mutual and pay compensation to patients and their families, the prescriptions for attendant care services were medically unnecessary.

414.   For example, patient J.B. (Claim No. 766746086002) was observed driving, shopping, and running errands on days that Five Star claimed he required sixteen (16) hours of attendant care services.

415.   Patient S.J. (Claim No. 035723234) was allegedly able to perform 139 sessions of physical therapy at the same time that Five Star billed Liberty Mutual for more than $126,000 in purported attendant care services.

416.   As discussed above, Five Star was also used by the defendants as a method to compensate patients and their families during treatment.

417.   Five Star "hired" close relatives and friends of patients of the defendant physical therapy clinics and paid them $10 per hour for performing alleged attendant care services, while charging Liberty Mutual $40 for the same purported treatment.

418.   Five Star did not perform any background checks or provide any training to the individuals it hired to "perform" attendant care services.

419.   Five Star also does not provide any materials or supplies to the individuals it hires to "perform" attendant care services.

420.   Five Star's owner Joseph Awada testified that he has never spoken to a referring physician about the needs of any patient.

421.   Attendant care services are only compensable if they are directly related to a patient's care and recovery; ordinary household tasks do not qualify for reimbursement as attendant care.

422.   Instead, ordinary household tasks, including preparation of meals, home and yard maintenance, and daily chores, may be reimbursed, if necessary, as replacement services.

423.   The alleged attendant care services billed by Five Star, if they were performed at all, were replacement services, not attendant care.

424.   For example, the alleged attendant care services billed by Five Star relative to patient S.J. (Claim No. 035723234) included preparing and "setup" of

meals, laundry, shopping, making beds, straightening rooms, taking out garbage, and other household chores.

425.   The alleged attendant care services billed by Five Star relative to patient J.B. (Claim No. 766746086002) included preparing and "setup" of meals, making beds, dusting, doing dishes, sweeping, vacuuming, cleaning rooms, yard work, and taking out garbage.

426.   None of these categories of alleged services qualify as attendant care.

427.   Five Star billed Liberty Mutual for performing attendant care that does not qualify as such because the statutory reimbursement amount for replacement services is just $20 per day.

428.   Five Star's unreasonable charges of $40 per hour, for as many as sixteen (16) hours per day, resulted in claims exponentially higher than what could be billed if the alleged services were properly reported as replacement services.

429.   The bills submitted by Five Star for alleged attendant care services also falsely represented that such services were performed by a "home health aide or certified nurse assistant."

430.   Because Five Star simply paid close friends and relatives of patients for the purported services, none of the alleged treatment providers were certified, or even trained at all, to provide nursing or attendant care services.

431.   For all of these reasons, the bills for alleged attendant care services mailed to Liberty Mutual were fraudulent.

432.   Liberty Mutual is not required to reimburse Five Star for attendant care services that were medically unnecessary and improperly performed, and it is entitled to a return of monies it paid to Five Star for such unnecessary and non-compensable services.

### D.   MEDICALLY UNNECESSARY TRANSPORTATION SERVICES

433.   In order to properly bill for medical transportation services, there must be a determination by a physician, documented in the patient's medical record, that the patient is disabled from driving.

434.   As discussed above, NextGen included disability from driving as preprinted boilerplate language in its medical records, and did not actually perform individualized evaluations of patients' driving capabilities.

435.   The lack of need for medical transportation billed to Liberty Mutual is evidenced by numerous examples of patients who were capable of, and did in fact continue, driving at the same time as defendants City 2 City and United Transportation submitted bills.

436.   For example, City 2 City billed Liberty Mutual for allegedly transporting N.T. (Claim No. 942135536002) to and from Relief and NextGen from September 2016 through April 2017.

437.   N.T. was able to, and did in fact, drive during that time period, as she was involved in at least one additional alleged motor vehicle accident on September 7, 2016 – a date for which City 2 City submitted a bill to Liberty Mutual for allegedly transporting N.T.

438.   United Transportation billed Liberty Mutual for alleged transportation services for J.B. (Claim No. 766746086002) through his purported treatment with Relief.

439.   J.B. was observed driving his own vehicle on multiple dates he was purportedly unable to drive, including one day on which he drove at least 145 miles.

440.   The defendants also submitted bills for medical transportation that was not and could not have been based on a physician determination of disability because the alleged transportation services were provided before any evaluation.

441.   For example, patient Z.H. (Claim No. 030003475) allegedly underwent an initial evaluation by admitted felon Laran Lerner, D.O. ("Lerner") on June 30, 2014.

442.   Lerner is currently serving a 45-month sentence in federal prison for submitting fraudulent claims totaling at least $5.7 million, including for office visits that never actually happened.

443.   City 2 City billed Liberty Mutual for purportedly transporting Z.H. to her initial evaluation with Lerner, despite the fact that there could not have been any medical determination that she was unable to drive prior to this first examination.

444.   In order to create the appearance of propriety for this service, City 2 City obtained a backdated disability certificate from Lerner which claimed that Z.H. had been unable to drive since June 14, 2014, which was two (2) days before her supposed motor vehicle accident.

445.   Liberty Mutual is not required to reimburse United Transportation or City 2 City for purported transportation services that were medically unnecessary, and it is entitled to a return of monies it paid to United Transportation or City 2 City for such unnecessary and non-compensable services.

## XI.   FRAUDULENT BILLING PRACTICES

### A.   FRAUDULENT UNBUNDLING

446.   Healthcare providers like the defendants have a responsibility to select and submit billing codes that accurately and truthfully identify the services performed and the complexity involved in rendering those services.

447.   The defendant physical therapy clinics failed to meet their responsibility and instead submitted claims to Liberty Mutual through the U.S. Mail using the fraudulent practice of unbundling, which is used to increase the amount charged for each patient visit.

448.   The government instituted the National Correct Coding Initiative ("NCCI") to promote national correct coding methodologies and to control improper coding leading to inappropriate payment for Medicare Part B claims.

449.   There are two NCCI edit tables: "Column One/Column Two Correct Coding Edit Table" and "Mutually Exclusive Edit Table."

450.   Each edit table has a Column One and Column Two HCPCS/CPT Code.

451.   Each edit table contains edits, which are pairs of HCPCS/CPT Codes that should not be reported together because the services (and reimbursement) of the Column Two code is subsumed by the services (and reimbursement) for the Column One code.

452.   Violation of the edits (billing a Column One code and a Column Two code on the same day for the same claimant) is known as "unbundling," which occurs when a provider bills separately for individual components of a procedure which are included in another billing code also billed for the same date of service.

453.   If a provider reports the two codes of an edit pair, the Column Two code is denied and the Column One code is eligible for payment.

454.   Defendants Relief, Westborn, Doc PT, First Step, and First National each routinely submitted charges to Liberty Mutual using CPT Code 97124 ("*massage, including effleurage, petrissage and/or tapotement (stroking,*

*compression, percussion)*") and CPT Code 97140 ("*manual therapy techniques (eg, mobilization/manipulation, manual lymphatic drainage, manual traction), 1 or more regions, each 15 minutes*") for the same patient on the same date of service.  *See* Exhibits 1 through 5.

455.   CPT Code 97124 is a Column Two code and CPT Code 97140 is a Column One code when billed on the same date of service for the same patient.

456.   Relief, Westborn, Doc PT, First Step, and First National submitted claims totaling at least $110,055 for purported massage using CPT Code 97124 on the same dates of service they billed for purported manual therapy using CPT Code 97140, all of which amounts to fraudulent unbundling.  Id.

457.   All claims submitted to Liberty Mutual for massage and manual therapy allegedly performed on the same date of service were fraudulently unbundled, and none of the claims for massage were reimbursable.

**B.**   **UNREASONABLE AND GROSSLY EXCESSIVE CHARGES**

458.   The Michigan No-Fault Act requires providers to submit charges for services at rates that are reasonable and customary.

459.   Each of the defendants routinely billed Liberty Mutual at rates that were unreasonable and had no relation to the services allegedly performed.

## 1.   Unreasonable Charges for Physical Therapy

460.   Relief, Westborn, and Doc PT submitted charges of $90 for each purported physical therapy modality at issue herein.  *See* Exhibits 1, 2, and 5.

461.   First Step submitted charges of $75 for each alleged physical therapy modality until in or about May of 2012, at which time it arbitrarily raised its charges for each modality to $90.  *See* Exhibit 4.

462.   First National submitted charges of $90 for each allegedly physical therapy modality until in or about May of 2017, at which time it arbitrarily raised its charges for each modality to $110.  *See* Exhibit 3.

463.   Vivid submitted charges of $85, $110, or $125 for each allegedly physical therapy modality at issue herein.  *See* Exhibit 6.

464.   These charge amounts are each independently unreasonable for the services allegedly provided.

465.   The uniform rates charged by Relief, Westborn, Doc PT, First Step, and First National also mean that Liberty Mutual was billed the same amount for unattended services such as application of hot packs, where patients were left alone, as it was billed for purported neuromuscular re-education, which requires continuous, direct, and one-on-one contact with a licensed therapist, and is primarily used to help patients who have suffered strokes regain function.

466.   The defendants' uniform charge amounts were also applied to services that have multiple CPT Codes to reflect the level of service provided.

467.   For example, the defendants charged the same amount for electrical stimulation regardless of whether the bill was submitted using CPT Code 97014, indicating the service was unattended, or CPT Code 97032, indicating that the service was provided with direct one-on-one patient contact.

468.   Charging the same amount for services that are performed with such widely varying levels of supervision and expertise required is arbitrary and unreasonable.

### 2.  Unreasonable Charges by NextGen

469.   NextGen, Baydoun, and Kutob routinely billed Liberty Mutual at rates that were unreasonable and had no relation to the services allegedly performed.

470.   Every charge submitted by NextGen at issue herein was billed at a rate that was several times higher than the reasonable and customary amount for the services provided.

471.   In order to assure that it received some payment for its fraudulent bills, NextGen, Baydoun, and Kutob entered into contracts to sell its accounts receivable to third parties for a fraction of the amount billed to Liberty Mutual.

472.   Specifically, NextGen (by and through Baydoun and Kutob) routinely entered into contracts to sell its accounts receivable to an entity called HMRF-Fund

III, LLC for just 26% percent of the amount it billed to Liberty Mutual.  *See* Exhibit 19.

473.   In other words, NextGen set the amounts it charged to Liberty Mutual to an amount for which it only actually expected to receive 26% of the total billed.

474.   In order to maximize the amount received, NextGen inflated its charges to outrageous amounts.

475.   For example, and as discussed above, NextGen routinely submitted charges totaling $17,750 for PEMF devices that were unlawfully issued to patients, if they were issued at all.

476.   The president of the company from which NextGen obtained the PEMF devices was shown a charge billed by NextGen relative to patient D.T. (Claim No. 942135536002) and testified that the exorbitant amount "makes me sick and angry."

477.   As discussed above, NextGen routinely billed Liberty Mutual $1,404 for alleged urine drug screens performed using a dipstick that cost it less than $10.

478.   Liberty Mutual is not obligated to pay pending bills submitted using unreasonable and uncustomary charge amounts and it is entitled to reimbursement for bills for which it has already tendered payment.

### 3.   Unreasonable Charges for Transportation Services

479.   United Transportation and City 2 City submitted charges to Liberty Mutual for purported medical transportation that were excessive and unreasonable for the services performed, if at all.

480.   For example, City 2 City submitted charges to Liberty Mutual for purportedly transporting patient Z.H. (030003475) from her home to defendant Relief several times per week from June 30, 2014 to May 27, 2015.

481.   Until May 2015, City 2 City billed Liberty Mutual $69.00 for each date it allegedly transported Z.H. to Relief.

482.   As discussed above, Z.H. was observed during surveillance being transported to Relief by her husband, not City 2 City.

483.   Starting in May 2015, City 2 City began charging Liberty Mutual $79.00 per date for Z.H.'s alleged transportation.

484.   During the entire period of her alleged treatment and transportation services, Z.H. lived just 1.2 miles away from Relief.

485.   The charges of $69.00 or $79.00 for transporting Z.H. 1.2 miles from her home to Relief are unreasonable, have no relation to the services allegedly provided, and far exceed other transportation options available to Z.H.

486.   For example, Z.H. could have used the Uber ride-hailing app to obtain transportation to Relief for just $13.30 round trip.

487.   Further, if Z.H. had used a ride-hailing app or a taxicab, she not only would have been charged a fraction of the price, she also would have received individualized service.

488.   To maximize the amount of its charges, City 2 City routinely picked up multiple passengers along a route and transported them to Relief *en masse*.

489.   Patient A.B. (Claim No. 363898040001) testified that there were as many as six (6) individuals in the United Transportation minivan that was used to transport her to and from Relief.

490.   United Transportation submitted charges to Liberty Mutual that included both a $50 "pick up" fee, a $50 "drop off" fee, and a $10 hourly fee on each date of service.

491.   These charges, which have no relation to the services allegedly provided by United Transportation, meant that each bill it submitted to Liberty Mutual had a baseline amount of at least $110, regardless of the distance a patient was actually transported or the number of patients transported in the same vehicle at the same time.

492.   For example, United Transportation charged Liberty Mutual $156.20 each time it purportedly transported patient C.H. (Claim No. 030928060) to Relief, despite C.H. living just seven (7) miles from the Relief clinic location.

493. Transportation of C.H. to Relief using the Uber ride-hailing app would have cost just approximately $28.00 round-trip for individualized service.

494. All of the charges submitted to Liberty by City 2 City and United Transportation were unreasonable, and neither can sustain their burden to prove otherwise.

## XII.  MISREPRESENTATIONS MADE TO AND RELIED UPON BY LIBERTY MUTUAL

495. To induce Liberty Mutual to pay promptly their fraudulent charges, the defendants submitted and caused to be submitted to Liberty Mutual false documentation that materially misrepresented that the services they referred and billed were necessary within the meaning of the Michigan No-Fault Act, that the charges for the same were reasonable, and that all treatment was lawfully and actually rendered.

496. Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Mich. Comp. Laws § 500.3107(1)(a).

497. Moreover, claims for medical benefits under Michigan's No-Fault Act can only be made for services that are "lawfully render[ed]."  Mich. Comp. Laws § 500.3157.

498.   Thus, every time the defendants submitted bills and medical records to Liberty Mutual supporting their claims for No-Fault benefits, the defendants necessarily warranted that such bills and records related to lawfully and actually rendered and necessary treatment for their patients' care, recovery, or rehabilitation.

499.   There are no less than fifteen (15) separate reasons why the defendants' alleged treatment was not in fact performed, was not lawful, was not medically necessary, and was fraudulently billed to Liberty Mutual.

a.   Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, and United Transportation billed Liberty Mutual for treatment and services that were not actually provided.  Patients at issue in this First Amended Complaint have denied receiving treatments and services for the lengths of time required, in the manner required, or in some cases, reported not receiving treatment and services at all from these defendants.

b.   The defendants made cash payments and used kickbacks to induce patients to undergo and physicians to order medically unnecessary treatment.  Joseph Awada and Relief made cash payments to patients in exchange for treatment.  NextGen, Baydoun, and Kutob paid bonuses to physicians to incentivize them to order and bill for medically unnecessary services.

c.   The defendants billed Liberty Mutual for unlawfully performed treatment.  NextGen, Steve's Medical, and Orthopedic Medical lacked required licensure to issue DME in Michigan.  NextGen billed for spinal evaluation and treatment performed by a podiatrist.  Relief failed to have a licensed therapist properly supervise the staff who allegedly provided treatment.

d.   The defendants forged, falsified, and altered records to induce payment from Liberty Mutual.  Westborn obtained therapist signatures on blank records before treatment was performed, if it was performed at all. NextGen failed to have physicians sign their records, thus leaving them

unlocked for layperson Baydoun to alter.  Relief failed to create records of treatment for each alleged date of service and forged patient signatures on assignments and benefits.

e.      The defendants obtained patients through unlawful solicitation.  The defendants engaged in *quid pro quo* relationships with each other to establish a network of incessant and unjustified referrals.  Their methods of obtaining patients and making referrals to each other did not include considerations of medical necessity.

f.      The defendants used an unlawful predetermined treatment protocol, implemented by the ordering of excessive physical therapy, disability certificates, DME, diagnostic testing, medication, injection therapy, surgery, and urine drug testing.  This predetermined protocol is confirmed by the nearly identical purported findings and treatment plans ordered for patients at issue in this First Amended Complaint, which have no relationship to medical necessity or any patient-specific considerations.

g.      NextGen, Steve's Medical, and Orthopedic Medical billed Liberty Mutual for medically unnecessary and contraindicated DME that they issued to patients, if at all, in furtherance of the defendants' predetermined treatment protocol to bill Liberty Mutual for as many ancillary services as possible and not based on individual patient need.

h.      NextGen prescribed excessive physical therapy for patients and directed these patients to the defendant physical therapy clinics, among others, without any individual determination of medical necessity, and without any evaluation of the efficacy of such treatment.  The predetermined nature of these referrals is illustrated by orders for physical therapy without reference to whether or not the patient was already attending physical therapy or whether it was effective.

i.      The defendant physical therapy clinics billed Liberty Mutual for excessive physical therapy treatment that was performed, if at all, pursuant to the defendants' predetermined treatment protocol that called for the defendants to bill for as many services and treatment as possible per patient. The physical therapy billed by these defendants rarely varied from patient to patient, evidencing the fact that treatment

was not rendered based on individual patient needs but a predetermined treatment protocol.

j.   City 2 City and United Transportation billed Liberty Mutual for transportation services that were not medically necessary and performed, if at all, to increase the likelihood that patients would present to appointments with the other defendants in furtherance of the defendants' scheme. Furthermore, the transportation services billed to Liberty Mutual began prior to any healthcare provider determining these services were medically necessary and, thus, were unlawful.

k.   NextGen ordered and billed for medical unnecessary urine drug testing, as evidenced by the lack of influence of urine drug test results on their prescription habits, which continued without change even in the face of evidence that patients were abusing or diverting the drugs prescribed.

l.   NextGen, Baydoun, and Kutob subjected patients to dangerous invasive treatments and surgeries that were medically unnecessary and selected only because they allowed for the most aggressive charges to submit to Liberty Mutual.

m.   Five Star billed Liberty Mutual for attendant care services which, if performed at all, were by untrained and unqualified friends and family of patients and amounted to performance of household tasks that are expressly non-compensable as attendant care pursuant to Michigan law.

n.   Relief, Westborn, First National, First Step, and Doc PT fraudulently unbundled charges to Liberty Mutual for the alleged performance of massage and manual therapy on the same dates of service.

o.   The defendants charged Liberty Mutual grossly unreasonable and uncustomary amounts for all of the treatment and services allegedly performed.

500.   Each action and misrepresentation by the clinic defendants was decided and made by and through their respective owners and controllers, namely, the individual defendants.

88

501.   As detailed *supra*, the defendants frequently violated established standards of care, treated excessively, and rendered treatment without basis or adequate substantiation.

502.   The foregoing facts – billing for services not rendered, unlawfully soliciting patients, offering kickbacks/inducements, falsifying documents, using a predetermined treatment protocol to inflate charges, and misrepresenting the necessity of procedures billed – were not, and could not have been, known to Liberty Mutual until it commenced its investigation of the defendants shortly before the filing of this action.

503.   Taken as a whole, the prevalence of such facts and the defendants' failure to abide by accepted standards of care render the treatment, services, and testing allegedly provided by the defendants unnecessary and unlawful.

504.   The fact of violations of medical standards is present with respect to every patient at issue in this First Amended Complaint, including those specific representative patients set out above and in the charts annexed at Exhibits 1 through 12.

505.   Thus, each claim for payment (and accompanying medical records) under Michigan's No-Fault Act mailed to Liberty Mutual by, on behalf of, or with the knowledge of the defendants constitutes a misrepresentation because the

treatment underlying the claim was not lawful and medically necessary, as it must be in order to be compensable under Michigan law.

506. Moreover, each Health Insurance Claim Form ("HICF") bill submitted to Liberty Mutual by the defendants contained the following notation: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

507. Through the submission of patient records, invoices, HICFs, and other medical documentation to Liberty Mutual via the U.S. Mail, the defendants attested to the fact, lawfulness, and medical necessity of the visits, examinations, testing, procedures, and ancillary services for which they billed Liberty Mutual.

508. As the defendants did not render lawful and reasonably necessary medical treatment, services, and testing, and misrepresented the treatment, services, and testing purportedly performed, each bill and accompanying documentation mailed by or on behalf of the defendants to Liberty Mutual in order to seek reimbursement under Michigan's No-Fault Act constitutes a material misrepresentation.

509. Due to the defendants' material misrepresentations and other affirmative acts designed to conceal their fraudulent scheme, Liberty Mutual did not

and could not have discovered that its damages were attributable to fraud until shortly before it filed this First Amended Complaint.

510.   The facially valid documents submitted to Liberty Mutual by the defendants were designed to, and did in fact, induce Liberty Mutual to rely on the documents.

511.   In reliance on the defendants' misrepresentations, Liberty Mutual paid money to the defendants to its detriment.

512.   Liberty Mutual would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the referrals and services billed.

513.   As a result, Liberty Mutual has paid in excess of $904,714 to the defendants in reasonable reliance on the false medical documentation and false representations regarding the defendants' eligibility for reimbursement under the Michigan No-Fault Act.

## XIII.  THE DEFENDANTS' MAIL FRAUD RACKETEERING ACTIVITY

514.   As discussed *supra*, the referrals, treatment, and services purportedly provided by the defendants were not medically necessary, were unlawful, and were fraudulently billed.

515.   The objective of the scheme to defraud Liberty Mutual, which occurred throughout the period noted in Exhibits 1 through 12, was to collect insurance

payments under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act to which the defendants were not entitled because the medical services rendered, if at all, were not necessary and were not lawfully rendered, and were fraudulently billed.

516.   This objective necessarily required the submission of claims for reimbursement to Liberty Mutual.

517.   The defendants created, prepared, and submitted false medical documentation and placed in a post office and/or authorized depository for mail matter things to be sent and delivered by the United States Postal Service.

518.   All documents, medical records, notes, reports, HICFs, medical diagnoses, letters, correspondence, and requests for payment in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

519.   Every automobile insurance claim detailed herein involved at least one (1) use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, benefits payment checks, and the return of the cancelled check drafts to the financial institution(s) from which the draft(s) were drawn, as well as the return of check draft duplicates to Liberty Mutual.

520.   Every payment at issue in this First Amended Complaint where Liberty Mutual was induced to rely on the defendants' false medical records and bills was tendered via a check mailed by Liberty Mutual using the U.S. Mail.

521.    The fraudulent medical billing scheme detailed herein generated thousands of mailings.

522.    A chart highlighting representative examples of mail fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 20.

523.    As detailed herein, the defendants also submitted, caused to be submitted, or knew medical documentation and claims for payment would be submitted to Liberty Mutual via the U.S. Mail related to each representative patient discussed in this First Amended Complaint.

524.    It was within the ordinary course of business for Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2 City to submit bills for No-Fault reimbursement to insurance carriers like Liberty Mutual through the U.S. Mail.

525.    The defendant clinics, at the direction and with the knowledge of their owners and managers (i.e., the individual defendants), continue to submit claims for payment to Liberty Mutual and, in some instances, continue to commence litigation against Liberty Mutual seeking to collect on unpaid claims.

526.    Thus, the defendants' commission of mail fraud continues.

527.    As all of the defendants named herein agreed that they would use (and, in fact, did use) the mails in furtherance of their scheme to defraud Liberty Mutual

by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

528.   Liberty Mutual reasonably relied on the submissions it received from Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2 City, including the representative submissions set out in Exhibit 20 annexed hereto and identified in the representative patient claims above.

529.   As the defendants agreed to pursue the same criminal objective (namely, mail fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Liberty Mutual's damages.

## XIV.  DAMAGES

530.   The pattern of fraudulent conduct by the defendants injured Liberty Mutual in its business and property by reason of the aforesaid violations of law.

531.   Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation, and Liberty Mutual's damages continue to accrue, Liberty Mutual's injury includes, but is not limited to, compensatory damages in excess of $904,714.

532.   Exhibits 21 (Relief), 22 (Westborn), 23 (First National), 24 (First Step), 25 (Doc PT), 26 (Vivid), 27 (NextGen), 28 (Five Star), 29 (Steve's Medical), 30

(Orthopedic Medical), 31 (United Transportation), and 32 (City 2 City) annexed hereto and incorporated herein as if fully set forth in their entirety, identify monies paid by Liberty Mutual to the defendants by date, payor, patient claim number, check number, and amount.

533.   Every claim identified in Exhibits 1 through 12 derives from a Liberty Mutual insurance policy.

534.   Every payment identified in Exhibits 21 through 32 was made by Liberty Mutual alone and from checks sent to the defendants through the U.S. Mail, and Liberty Mutual has not been reimbursed for any of the payments itemized in Exhibits 21 through 32.

535.   Liberty Mutual also seeks damages, in an amount to be determined at trial, related to the cost of claims handling/adjustment for claims mailed by the defendants, which includes the cost of investigation to uncover the fraudulent nature of the claims submitted by the defendants.

536.   Liberty Mutual investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

## XV.   CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Relief Enterprise)
### Against NextGen Pain Associates and Rehabilitation, LLC, Five Star Comfort Care, LLC, Orthopedic Medical Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

537.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

538.   Relief constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

539.   In connection with each of the claims identified in the within First Amended Complaint, NextGen, Five Star, Orthopedic Medical, United Transportation, City 2 City, Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count I defendants") intentionally caused to be prepared and mailed false medical documentation by Relief, or knew that such false medical documentation would be mailed in the ordinary course of Relief's business, or should have reasonably foreseen that the mailing of such false medical documentation by Relief would occur, in furtherance of the Count I defendants' scheme to defraud.

540.   The Count I defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on

certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

541.   As documented above, the Count I defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Relief, which they knew would be billed by Relief, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

542.   Joseph Awada, Merhi, and Cheikh owned and managed Relief and were responsible for all actions taken by Relief and its staff.

543.   NextGen, Baydoun, and Kutob issued prescriptions for medically unnecessary physical therapy, which were used by Relief to justify improper and unnecessary services billed to Liberty Mutual.

544.   United Transportation, City 2 City, Steven Awada, Ameer Awada, Mahmoud Awada, and Cheikh transported patients to Relief for unnecessary physical therapy.

545.   Five Star and Steven Awada billed Liberty Mutual for unnecessary attendant care for patients of Relief, which was used to create the appearance of injury and support for bills submitted by Relief.

546.   Orthopedic Medical, Steven Awada, and Ameer Awada issued unlawful and unnecessary DME to patients of Relief, which was used to create the appearance of injury and support for bills submitted by Relief.

547.   The Count I defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Relief to continue providing unlawful and medically unnecessary treatment, if provided at all.

548.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Relief for the benefit of the Count I defendants that would not otherwise have been paid.

549.   The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

550.   By virtue of the Count I defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
## VIOLATION OF 18 U.S.C. § 1962(d)
### (Relief Enterprise)
### Against NextGen Pain Associates and Rehabilitation, LLC, Five Star Comfort Care, LLC, Orthopedic Medical Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

551.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

552.   Defendants NextGen, Five Star, Orthopedic Medical, United Transportation, City 2 City, Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Relief.

553.   The Count II defendants each agreed to further, facilitate, support, and operate the Relief enterprise.

554.   As such, the Count II defendants conspired to violate 18 U.S.C. § 1962(c).

555.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Relief even though Relief was not eligible to collect such payments by virtue of its unlawful conduct.

556.   The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to

Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

557.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count II defendants' unlawful conduct described herein.

558.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>**COUNT III**</u>
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Westborn Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

559.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

560.   Westborn constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

561.   In connection with each of the claims identified in the within First Amended Complaint, NextGen, Steve's Medical, City 2 City, Steven Awada, Cheikh, Baydoun, and Kutob ("Count III defendants") intentionally caused to be prepared and mailed false medical documentation by Westborn, or knew that such false medical documentation would be mailed in the ordinary course of Westborn's business, or should have reasonably foreseen that the mailing of such false medical documentation by Westborn would occur, in furtherance of the Count III defendants' scheme to defraud.

562.   The Count III defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

563.   As documented above, the Count III defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Westborn, which they knew would be billed by Westborn, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

564.   Steven Awada owned and managed Westborn and was responsible for all actions taken by Westborn and its staff.

565.   NextGen, Baydoun, and Kutob issued prescriptions for medically unnecessary physical therapy, which were used by Westborn to justify improper and unnecessary services billed to Liberty Mutual.

566.   Steve's Medical and Steven Awada billed Liberty Mutual for unnecessary DME for patients of Westborn, which was used to create the appearance of injury and support for bills submitted by Westborn.

567.   City 2 City and Cheikh transported patients to Relief for unnecessary physical therapy.

568.   The Count III defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Westborn to continue providing unlawful and medically unnecessary treatment, if provided at all.

569.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Westborn for the benefit of the Count III defendants that would not otherwise have been paid.

570.   The Count III defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

571.   By virtue of the Count III defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained

by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT IV**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Westborn Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

572.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

573.   Defendants NextGen, Steve's Medical, City 2 City, Steven Awada, Cheikh, Baydoun, and Kutob ("Count IV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Westborn.

574.   The Count IV defendants each agreed to further, facilitate, support, and operate the Westborn enterprise.

575.   As such, the Count IV defendants conspired to violate 18 U.S.C. § 1962(c).

576.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Westborn even though Westborn was not eligible to collect such payments by virtue of its unlawful conduct.

577.   The Count IV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to

Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

578.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count IV defendants' unlawful conduct described herein.

579.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count IV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
## VIOLATION OF 18 U.S.C. § 1962(c)
### (First National Enterprise)
### Against Vivid Rehab Inc, Steven Awada, Hussien Awada, and Lawrence Atat

580.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

581.   First National constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

582.   In connection with each of the claims identified in the within First Amended Complaint, Vivid, Steven Awada, Hussien Awada, and Atat ("Count V

defendants") intentionally caused to be prepared and mailed false medical documentation by First National, or knew that such false medical documentation would be mailed in the ordinary course of First National's business, or should have reasonably foreseen that the mailing of such false medical documentation by First National would occur, in furtherance of the Count V defendants' scheme to defraud.

583.   The Count V defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

584.   As documented above, the Count V defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by First National, which they knew would be billed by First National, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

585.   Steven Awada and Hussien Awada owned and managed First National and were responsible for all actions taken by First National and its staff.

586.   Atat solicited patients to undergo medically unnecessary physical therapy at First National.

587.   Vivid operated as a continuation of First National and rendered nearly identical unnecessary services to patients of First National, thereby permitting First National to continue seeking payment from Liberty Mutual.

588.   The Count V defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted First National to continue providing unlawful and medically unnecessary treatment, if provided at all.

589.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to First National for the benefit of the Count V defendants that would not otherwise have been paid.

590.   The Count V defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

591.   By virtue of the Count V defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VI**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(First National Enterprise)**
**Against Vivid Rehab Inc, Steven Awada, Hussien Awada, and Lawrence Atat**

592.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

593.   Defendants Vivid, Steven Awada, Hussien Awada, and Atat ("Count VI defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of First National.

594.   The Count VI defendants each agreed to further, facilitate, support, and operate the First National enterprise.

595.   As such, the Count VI defendants conspired to violate 18 U.S.C. § 1962(c).

596.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of First National even though First National was not eligible to collect such payments by virtue of its unlawful conduct.

597.   The Count VI defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

598.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make

insurance payments as a result of the Count VI defendants' unlawful conduct described herein.

599.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count VI defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(First Step Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Imad Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob**

600.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

601.   First Step constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

602.   In connection with each of the claims identified in the within First Amended Complaint, NextGen, United Transportation, Steven Awada, Imad Awada, Ameer Awada, Mahmoud Awada, Baydoun, and Kutob ("Count VII defendants") intentionally caused to be prepared and mailed false medical documentation by First Step, or knew that such false medical documentation would

108

be mailed in the ordinary course of First Step's business, or should have reasonably foreseen that the mailing of such false medical documentation by First Step would occur, in furtherance of the Count VII defendants' scheme to defraud.

603.   The Count VII defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

604.   As documented above, the Count VII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by First Step, which they knew would be billed by First Step, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

605.   Imad Awada owned and managed First Step and was responsible for all actions taken by First National and its staff.

606.   NextGen, Baydoun, and Kutob issued prescriptions for medically unnecessary physical therapy, which were used by First Step to justify improper and unnecessary services billed to Liberty Mutual.

607.   United Transportation, Steven Awada, Ameer Awada, and Mahmoud Awada transported patients to First Step for unnecessary physical therapy.

608.   The Count VII defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted First Step to continue providing unlawful and medically unnecessary treatment, if provided at all.

609.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to First Step for the benefit of the Count VII defendants that would not otherwise have been paid.

610.   The Count VII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

611.   By virtue of the Count VII defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**<u>COUNT VIII</u>**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(First Step Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Imad Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob**

612.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

613.   Defendants NextGen, United Transportation, Steven Awada, Imad Awada, Ameer Awada, Mahmoud Awada, Baydoun, and Kutob ("Count VIII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of First Step.

614.   The Count VIII defendants each agreed to further, facilitate, support, and operate the First Step enterprise.

615.   As such, the Count VIII defendants conspired to violate 18 U.S.C. § 1962(c).

616.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of First Step even though First Step was not eligible to collect such payments by virtue of its unlawful conduct.

617.   The Count VIII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

618.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count VIII defendants' unlawful conduct described herein.

619.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count VIII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Doc PT Enterprise)
### Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob

620.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

621.   Doc PT constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

622.   In connection with each of the claims identified in the within First Amended Complaint, NextGen, United Transportation, Steven Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Baydoun, and Kutob ("Count IX defendants") intentionally caused to be prepared and mailed false medical documentation by Doc PT, or knew that such false medical documentation would be mailed in the ordinary course of Doc PT's business, or should have reasonably

foreseen that the mailing of such false medical documentation by Doc PT would occur, in furtherance of the Count IX defendants' scheme to defraud.

623.   The Count IX defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

624.   As documented above, the Count IX defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Doc PT, which they knew would be billed by Doc PT, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

625.   Magdalene Awada owned and managed Doc PT and was responsible for all actions taken by Doc PT and its staff.

626.   NextGen, Baydoun, and Kutob issued prescriptions for medically unnecessary physical therapy, which were used by Doc PT to justify improper and unnecessary services billed to Liberty Mutual.

627.   United Transportation, Steven Awada, Ameer Awada, and Mahmoud Awada transported patients to Doc PT for unnecessary physical therapy.

628.   The Count IX defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Doc PT to continue providing unlawful and medically unnecessary treatment, if provided at all.

629.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Doc PT for the benefit of the Count IX defendants that would not otherwise have been paid.

630.   The Count IX defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

631.   By virtue of the Count IX defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT X</u>
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Doc PT Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob**

632.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

114

633.   Defendants  NextGen,  United  Transportation,  Steven  Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Baydoun, and Kutob ("Count X defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Doc PT.

634.   The Count X defendants each agreed to further, facilitate, support, and operate the Doc PT enterprise.

635.   As such, the Count X defendants conspired to violate 18 U.S.C. § 1962(c).

636.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Doc PT even though Doc PT was not eligible to collect such payments by virtue of its unlawful conduct.

637.   The Count X defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty  Mutual  of  insurance  claim  and  medical  record  documents  containing material misrepresentations.

638.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance  payments  as  a  result  of  the  Count  X  defendants'  unlawful  conduct described herein.

639.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count X defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count X defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XI**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Vivid Enterprise)**
**Against First National Rehab, Inc., Steven Awada, Hussien Awada, and**
**Lawrence Atat**

640.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

641.   Vivid constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

642.   In connection with each of the claims identified in the within First Amended Complaint, First National, Steven Awada, Hussien Awada, and Atat ("Count XI defendants") intentionally caused to be prepared and mailed false medical documentation by Vivid, or knew that such false medical documentation would be mailed in the ordinary course of Vivid's business, or should have reasonably foreseen that the mailing of such false medical documentation by Vivid would occur, in furtherance of the Count XI defendants' scheme to defraud.

643.   The Count XI defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

644.   As documented above, the Count XI defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Vivid, which they knew would be billed by Vivid, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

645.   Atat owned and managed Vivid and was responsible for all actions taken by Vivid and its staff.

646.   NextGen, Baydoun, and Kutob issued prescriptions for medically unnecessary physical therapy, which were used by Vivid to justify improper and unnecessary services billed to Liberty Mutual.

647.   First National and Hussien Awada provided Vivid its patients and employees.

648.   The Count XI defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

injury and permitted Vivid to continue providing unlawful and medically unnecessary treatment, if provided at all.

649. As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Vivid for the benefit of the Count XI defendants that would not otherwise have been paid.

650. The Count XI defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

651. By virtue of the Count XI defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XII
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Vivid Enterprise)
### Against First National Rehab, Inc., Steven Awada, Hussien Awada, and Lawrence Atat

652. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

653.   Defendants First National, Steven Awada, Hussien Awada, and Atat ("Count XII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Vivid.

654.   The Count XII defendants each agreed to further, facilitate, support, and operate the Vivid enterprise.

655.   As such, the Count XII defendants conspired to violate 18 U.S.C. § 1962(c).

656.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Vivid even though Vivid was not eligible to collect such payments by virtue of its unlawful conduct.

657.   The Count XII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

658.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XII defendants' unlawful conduct described herein.

659.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is

entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XIII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(NextGen Enterprise)**
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Five Star Comfort Care LLC, Orthopedic Medical Supplies 1, Ltd., Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

660.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

661.   NextGen constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

662.   In connection with each of the claims identified in the within First Amended Complaint, Relief, Westborn, First Step, Doc PT, Five Star, Orthopedic Medical, Steve's Medical, City 2 City, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count XIII defendants") intentionally caused to be prepared and mailed false medical documentation by NextGen, or knew that such false medical documentation would be mailed in the ordinary course of NextGen's business, or should have reasonably

foreseen that the mailing of such false medical documentation by NextGen would occur, in furtherance of the Count XIII defendants' scheme to defraud.

663.   The Count XIII defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

664.   As documented above, the Count XIII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by NextGen, which they knew would be billed by NextGen, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

665.   Baydoun and Kutob owned and managed NextGen and were responsible for all actions taken by NextGen and its staff.

666.   Relief, Westborn, First Step, Doc PT, Joseph Awada, Steven Awada, Imad Awada, Magdalene Awada, Cheikh, and Merhi billed Liberty Mutual for medically unnecessary physical therapy services prescribed by NextGen, which was used to create the appearance that NextGen was performing lawful and necessary treatment to the patients at issue herein.

667. Five Star, Steven Awada, and Merhi billed Liberty Mutual for attendant care services ordered by NextGen, which were used to create the appearance that patients of NextGen had significant injuries.

668. Orthopedic Medical, Steve's Medical, Steven Awada, and Ameer Awada issued DME prescribed by NextGen, which was used by NextGen to perpetuate medically unnecessary evaluations and services.

669. City 2 City and Cheikh transported patients to Relief for unnecessary physical therapy.

670. The Count XIII defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted NextGen to continue providing unlawful and medically unnecessary treatment, if provided at all.

671. As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to NextGen for the benefit of the Count XIII defendants that would not otherwise have been paid.

672. The Count XIII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

673. By virtue of the Count XIII defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages

sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIV
## VIOLATION OF 18 U.S.C. § 1962(d)
### (NextGen Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Five Star Comfort Care LLC, Orthopedic Medical Supplies 1, Ltd., Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

674. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

675. Defendants Relief, Westborn, First Step, Doc PT, Five Star, Orthopedic Medical, Steve's Medical, City 2 City, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count XIV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of NextGen.

676. The Count XIV defendants each agreed to further, facilitate, support, and operate the NextGen enterprise.

677. As such, the Count XIV defendants conspired to violate 18 U.S.C. § 1962(c).

123

678.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of NextGen even though NextGen was not eligible to collect such payments by virtue of its unlawful conduct.

679.   The Count XIV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

680.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XIV defendants' unlawful conduct described herein.

681.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XIV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XIV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XV
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Five Star Enterprise)
### Against NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ali Merhi, Abdul Baydoun, and Nura Kutob

682.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

683.   Five Star constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

684.   In connection with each of the claims identified in the within First Amended Complaint, NextGen, Steven Awada, Joseph Awada, Merhi, Baydoun, and Kutob ("Count XV defendants") intentionally caused to be prepared and mailed false medical documentation by Five Star, or knew that such false medical documentation would be mailed in the ordinary course of Five Star's business, or should have reasonably foreseen that the mailing of such false medical documentation by Five Star would occur, in furtherance of the Count XV defendants' scheme to defraud.

685.   The Count XV defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

686.  As documented above, the Count XV defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Five Star, which they knew would be billed by Five Star, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

687.  Steven Awada, Joseph Awada, and Merhi owned and managed Five Star and were responsible for all actions taken by Five Star and its staff.

688.  NextGen, Baydoun, and Kutob wrote prescriptions for medically unnecessary attendant care services to the patients at issue herein to permit Five Star to bill Liberty Mutual.

689.  The Count XV defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Five Star to continue providing unlawful and medically unnecessary treatment, if provided at all.

690.  As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Five Star for the benefit of the Count XV defendants that would not otherwise have been paid.

691.    The Count XV defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

692.    By virtue of the Count XV defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVI
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Five Star Enterprise)
### Against NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ali Merhi, Abdul Baydoun, and Nura Kutob

693.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

694.    Defendants NextGen, Steven Awada, Joseph Awada, Merhi, Baydoun, and Kutob ("Count XVI defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Five Star.

695.    The Count XVI defendants each agreed to further, facilitate, support, and operate the Five Star enterprise.

696.    As such, the Count XVI defendants conspired to violate 18 U.S.C. § 1962(c).

697.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Five Star even though Five Star was not eligible to collect such payments by virtue of its unlawful conduct.

698.   The Count XVI defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

699.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XVI defendants' unlawful conduct described herein.

700.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVI defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XVI defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVII
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Steve's Medical Enterprise)
### Against Westborn Physical Therapy, LLC, NextGen Pain Associates and
### Rehabilitation LLC, Steven Awada, Abdul Baydoun, and Nura Kutob

701.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

702.   Steve's Medical constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

703.   In connection with each of the claims identified in the within First Amended Complaint, Westborn, NextGen, Steven Awada, Baydoun, and Kutob ("Count XVII defendants") intentionally caused to be prepared and mailed false medical documentation by Steve's Medical, or knew that such false medical documentation would be mailed in the ordinary course of Steve's Medical's business, or should have reasonably foreseen that the mailing of such false medical documentation by Steve's Medical would occur, in furtherance of the Count XVII defendants' scheme to defraud.

704.   The Count XVII defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

705.   As documented above, the Count XVII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Steve's Medical, which they knew would be billed by Steve's Medical, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

706.   Steven Awada owned and managed Steve's Medical and was responsible for all actions taken by Steve's Medical and its staff.

707.   Westborn and Steven Awada stored and distributed medically unnecessary DME billed by Steve's Medical.

708.   NextGen, Baydoun, and Kutob wrote prescriptions for medically unnecessary DME that was issued by Steve's Medical.

709.   The Count XVII defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Steve's Medical to continue providing unlawful and medically unnecessary treatment, if provided at all.

710.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Steve's Medical for the benefit of the Count XVII defendants that would not otherwise have been paid.

711.   The Count XVII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

712.   By virtue of the Count XVII defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVIII
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Steve's Medical Enterprise)
### Against Westborn Physical Therapy, LLC, NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Abdul Baydoun, and Nura Kutob

713.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

714.   Defendants Westborn, NextGen, Steven Awada, Baydoun, and Kutob ("Count XVIII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Steve's Medical.

715.   The Count XVIII defendants each agreed to further, facilitate, support, and operate the Steve's Medical enterprise.

716.   As such, the Count XVIII defendants conspired to violate 18 U.S.C. § 1962(c).

717.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Steve's Medical even though Steve's Medical was not eligible to collect such payments by virtue of its unlawful conduct.

718.   The Count XVIII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

719.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XVIII defendants' unlawful conduct described herein.

720.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVIII defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XVIII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIX
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Orthopedic Medical Enterprise)
### Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

721.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

722.   Orthopedic Medical constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

723.   In connection with each of the claims identified in the within First Amended Complaint, Relief, NextGen, Steven Awada, Joseph Awada, Ameer Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count XIX defendants") intentionally caused to be prepared and mailed false medical documentation by Orthopedic Medical, or knew that such false medical documentation would be mailed in the ordinary course of Orthopedic Medical's business, or should have reasonably foreseen that the mailing of such false medical documentation by Steve's Medical would occur, in furtherance of the Count XIX defendants' scheme to defraud.

724.   The Count XIX defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual

on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

725. As documented above, the Count XIX defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by Orthopedic Medical, which they knew would be billed by Orthopedic Medical, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

726. Steven Awada and Ameer Awada owned and managed Orthopedic Medical and were responsible for all actions taken by Orthopedic Medical and its staff.

727. Relief, Joseph Awada, Merhi, and Cheikh stored and distributed medically unnecessary DME billed by Orthopedic Medical.

728. NextGen, Baydoun, and Kutob wrote prescriptions for medically unnecessary DME that was issued by Orthopedic Medical.

729. The Count XIX defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Orthopedic Medical to continue providing unlawful and medically unnecessary treatment, if provided at all.

730.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Orthopedic Medical for the benefit of the Count XIX defendants that would not otherwise have been paid.

731.   The Count XIX defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

732.   By virtue of the Count XIX defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XX
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Orthopedic Medical Enterprise)
### Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

733.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

734.   Defendants Relief, NextGen, Steven Awada, Joseph Awada, Ameer Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count XX defendants") conspired

with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Orthopedic Medical.

735.   The Count XX defendants each agreed to further, facilitate, support, and operate the Orthopedic Medical enterprise.

736.   As such, the Count XX defendants conspired to violate 18 U.S.C. § 1962(c).

737.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Orthopedic Medical even though Orthopedic Medical was not eligible to collect such payments by virtue of its unlawful conduct.

738.   The Count XX defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

739.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XX defendants' unlawful conduct described herein.

740.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XX defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the

claims submitted by or on behalf of the Count XX defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXI
### VIOLATION OF 18 U.S.C. § 1962(c)
### (United Transportation Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, and Mohamed Cheikh**

741.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

742.   United Transportation constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

743.   In connection with each of the claims identified in the within First Amended Complaint, Relief, First Step, Doc PT, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Merhi, and Cheikh ("Count XXI defendants") intentionally caused to be prepared and mailed false medical documentation by United Transportation, or knew that such false medical documentation would be mailed in the ordinary course of United Transportation's business, or should have reasonably foreseen that the mailing of such false medical documentation by United Transportation would occur, in furtherance of the Count XXI defendants' scheme to defraud.

744.   The Count XXI defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

745.   As documented above, the Count XXI defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by United Transportation, which they knew would be billed by United Transportation, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

746.   Steven Awada, Ameer Awada, and Mahmoud Awada owned and managed United Transportation and were responsible for all actions taken by United Transportation and its staff.

747.   Relief, First Step, Doc PT, Joseph Awada, Imad Awada, Magdalene Awada, Merhi, and Cheikh ordered the medically unnecessary courses of physical therapy to which United Transportation purported to transport patients.

748.   The Count XXI defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted United Transportation to continue providing unlawful and medically unnecessary treatment, if provided at all.

749.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to United Transportation for the benefit of the Count XXI defendants that would not otherwise have been paid.

750.   The Count XXI defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

751.   By virtue of the Count XXI defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXII
## VIOLATION OF 18 U.S.C. § 1962(d)
### (United Transportation Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, and Mohamed Cheikh**

752.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

753.   Defendants Relief, First Step, Doc PT, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Merhi, and

Cheikh ("Count XXII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of United Transportation.

754.   The Count XXII defendants each agreed to further, facilitate, support, and operate the United Transportation enterprise.

755.   As such, the Count XXII defendants conspired to violate 18 U.S.C. § 1962(c).

756.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of United Transportation even though United Transportation was not eligible to collect such payments by virtue of its unlawful conduct.

757.   The Count XXII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

758.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XXII defendants' unlawful conduct described herein.

759.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXII defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is

entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XXII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXIII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(City 2 City Enterprise)**
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn**
**Physical Therapy, LLC, NextGen Pain Associates and Rehabilitation, LLC,**
**Steven Awada, Joseph Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun,**
**and Nura Kutob**

760.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

761.   City 2 City constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

762.   In connection with each of the claims identified in the within First Amended Complaint, Relief, Westborn, NextGen, Steven Awada, Joseph Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count XXIII defendants") intentionally caused to be prepared and mailed false medical documentation by City 2 City, or knew that such false medical documentation would be mailed in the ordinary course of City 2 City's business, or should have reasonably foreseen that the mailing of such false medical documentation by City 2 City would occur, in furtherance of the Count XXIII defendants' scheme to defraud.

141

763.   The Count XXIII defendants knew that two (2) or more mailings would be sent through the U.S. Mail to demand and receive payment from Liberty Mutual on certain dates, including, but not limited to, those mailings identified in the chart annexed hereto at Exhibit 20.

764.   As documented above, the Count XXIII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual through the U.S. Mail for medical services that were purportedly performed by City 2 City, which they knew would be billed by City 2 City, in order to collect payment from Liberty Mutual under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

765.   Cheikh owned and managed City 2 City and was responsible for all actions taken by City 2 City and its staff.

766.   Relief, Westborn, Steven Awada, Merhi, and Cheikh ordered the medically unnecessary courses of physical therapy to which City 2 City purported to transport patients.

767.   NextGen, Baydoun, and Kutob issued false disability certificates claiming patients at issue herein were unable to drive, enabling City 2 City to submit bills to Liberty Mutual.

768.   The Count XXIII defendants submitted, or caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

142

injury and permitted City 2 City to continue providing unlawful and medically unnecessary treatment, if provided at all.

769. As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to City 2 City for the benefit of the Count XXIII defendants that would not otherwise have been paid.

770. The Count XXIII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

771. By virtue of the Count XXIII defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXIV
### VIOLATION OF 18 U.S.C. § 1962(d)
#### (City 2 City Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, NextGen Pain Associates and Rehabilitation, LLC, Steven Awada, Joseph Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

772. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

773.   Defendants Relief, Westborn, NextGen, Steven Awada, Joseph Awada, Merhi, Cheikh, Baydoun, and Kutob ("Count XXIV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of City 2 City.

774.   The Count XXIV defendants each agreed to further, facilitate, support, and operate the City 2 City enterprise.

775.   As such, the Count XXIV defendants conspired to violate 18 U.S.C. § 1962(c).

776.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of City 2 City even though City 2 City was not eligible to collect such payments by virtue of its unlawful conduct.

777.   The Count XXIV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

778.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XXIV defendants' unlawful conduct described herein.

779.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXIV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count XXIV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXV**
**COMMON LAW FRAUD**
**Against All Defendants**

780.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

781.   The scheme to defraud perpetrated by Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, City 2 City, Steven Awada, Joseph Awada, Hussien Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Merhi, Cheikh, Atat, Baydoun, and Kutob ("Count XXV defendants") was dependent upon a succession of material misrepresentations of fact that the defendants were entitled to collect benefits pursuant to Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

782.   The misrepresentations of fact made by the Count XXV defendants include, but are not limited to, those material misrepresentations discussed in section XII *supra*.

783.   The Count XXV defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

784.   The misrepresentations were intentionally made by the Count XXV defendants in furtherance of their scheme to defraud Liberty Mutual by submitting, causing to be submitted, or knowing that non-compensable claims for payment pursuant to Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act would be submitted to Liberty Mutual.

785.   The Count XXV defendants' misrepresentations were known to be false and were made for the purpose of inducing Liberty Mutual to make payments for claims that are not compensable under Liberty Mutual policies and Michigan law.

786. Liberty Mutual reasonably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for alleged medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

787.   As a direct and proximate result of the defendants' fraudulent representations and acts, Liberty Mutual has been damaged in its business and property as previously described herein.

**COUNT XXVI**
**CIVIL CONSPIRACY**
**Against All Defendants**

788.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

789.   Defendants Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, City 2 City, Steven Awada, Joseph Awada, Hussien Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Merhi, Cheikh, Atat, Baydoun, and Kutob ("Count XXVI defendants") combined and concerted to accomplish the unlawful purpose of defrauding Liberty Mutual by submitting claims for reimbursement pursuant to Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act to which they were not entitled because (1) the defendants did not actually render the treatment for which claims were submitted, (2) the defendants did not provide reasonably necessary medical treatment, (3) the defendants did not lawfully render treatment, and (4) the defendants engaged in fraudulent billing practices.

790.   The Count XXVI defendants worked together to achieve an unlawful purpose (namely, defrauding Liberty Mutual for personal gain).

791.   This purpose was known to all of the Count XXVI defendants and intentionally pursued.

792.   Despite knowing that the defendants were not entitled to reimbursement pursuant to Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act because they billed for services that were not actually provided, because they billed for services that were not reasonably necessary, because treatment was not lawfully rendered, and because they engaged in fraudulent billing practices, the Count XXVI defendants nonetheless submitted, caused to be submitted, or knew that claims would be submitted (with accompanying false medical documentation) to Liberty Mutual seeking payment to the defendants.

793.   In reasonable reliance on the false medical documentation submitted by the defendants, Liberty Mutual paid certain of the claims submitted.

794.   All of the Count XXVI defendants directly benefited from the payments made to Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2 City.

795.   All of the Count XXVI defendants actively and intentionally partook in a scheme to defraud Liberty Mutual and also encouraged and aided other Count

XXVI defendants in the commission of acts done for the benefit of all Count XXVI

defendants and to the unjustified detriment of Liberty Mutual.

796.   Accordingly, all of the Count XXVI defendants are equally liable for

the fraud perpetrated on Liberty Mutual pursuant to their conspiracy.

## COUNT XXVII
### PAYMENT UNDER MISTAKE OF FACT
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical Supplies 1 Ltd., United Transportation 1, Inc., and City 2 City Transportation, LLC**

797.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference

paragraphs 1 through 536 set forth above as if fully set forth herein.

798.   Liberty Mutual paid the amounts described herein and itemized in

Exhibits 21 through 32 under a misunderstanding, misapprehension, error, fault, or

ignorance of material facts, namely, the scheme to defraud Liberty Mutual by

misrepresenting the fact, lawfulness, and necessity of services purportedly provided

and billed by Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen,

Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2

City ("Count XXVII defendants").

799.   Liberty Mutual sustained damages by paying under a mistake of fact

the claims submitted by the Count XXVII defendants, which misrepresented the fact,

reasonableness, necessity, and lawfulness of the medical services allegedly rendered and whether the patient's injury arose out of a motor vehicle accident.

800.   The Count XXVII defendants, individually and jointly, would be unjustly enriched if permitted to retain the payments made to them by Liberty Mutual under a mistake of fact.

801.   Liberty Mutual is entitled to restitution from each of the Count XXVII defendants, individually and jointly, for all monies paid to and/or received by them from Liberty Mutual.

## COUNT XXVIII
### UNJUST ENRICHMENT
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical Supplies 1 Ltd., United Transportation 1, Inc., and City 2 City Transportation, LLC**

802.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

803.   Liberty Mutual paid monies, including those amounts set out in Exhibits 21 through 32, in response to the claims submitted, or caused to be submitted, by defendants Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, and City 2 City ("Count XXVIII defendants") in reasonable belief that it was legally

obligated to make such payments based upon the defendants' fraudulent misrepresentations.

804.   Liberty Mutual's payments constitute a benefit which the Count XXVIII defendants aggressively sought and voluntarily accepted.

805.   The Count XXVIII defendants wrongfully obtained payments from Liberty Mutual through the fraudulent scheme detailed herein.

806.   The Count XXVIII defendants have been unjustly enriched by receipt of these wrongfully obtained payments from Liberty Mutual.

807.   The Count XXVIII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT XXIX
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

808.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 536 set forth above as if fully set forth herein.

809.   Defendants Relief, Westborn, First National, First Step, Doc PT, Vivid, NextGen, Five Star, Steve's Medical, Orthopedic Medical, United Transportation, City 2 City, Steven Awada, Joseph Awada, Hussien Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Merhi, Cheikh, Atat, Baydoun, and Kutob ("Count XXIX defendants") routinely billed for unnecessary

and unlawful services with respect to the patients at issue in this First Amended Complaint.

810. The Count XXIX defendants also rendered services pursuant to a fraudulent scheme whereby patients were illegally solicited and referred to them for the purpose of generating claims to Liberty Mutual, and not for the purpose of providing reasonably necessary medical treatment, testing, or services.

811. Pursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for reasonable and necessary expenses for lawfully rendered treatment arising out of a motor vehicle accident.  Mich. Comp. Laws §§ 500.3105 and 500.3107.

812. The lack of reasonableness and necessity are defenses to an insurer's obligation to pay No-Fault benefits arising out of a motor vehicle accident.  Mich. Comp. Laws § 500.3107.

813. The lack of lawfully-rendered treatment (such as treatment arising from illegal solicitation and unlicensed treatment) is also a defense to an insurer's obligation to pay No-Fault benefits.

814. Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

815.   The Count XXIX defendants continue to submit claims under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act for unnecessary and unlawfully rendered medical services to Liberty Mutual, and other claims remain pending with Liberty Mutual.

816.   The Count XXIX defendants will continue to submit claims under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act absent a declaration by this Court that Liberty Mutual has no obligation to pay fraudulent pending and previously-denied insurance claims submitted by any of the Count XXIX defendants for any or all of the reasons set out in the within First Amended Complaint.

817.   Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXIX defendants billed for unnecessary and unlawful treatment that is not compensable under Liberty Mutual policies and applicable provisions of the Michigan No-Fault Act.

818.   Liberty Mutual also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXIX defendants were engaged in a fraudulent scheme whereby they billed for unnecessary and unlawful treatment and submitted unreasonable charges for the same to Liberty Mutual at all relevant times.

819.  As such, the Count XXIX defendants have no standing to submit, pursue, or receive benefits or any other payment from Liberty Mutual, and Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXIX defendants cannot seek payment from Liberty Mutual for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within First Amended Complaint.

820.  Liberty Mutual further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XXIX defendants cannot balance bill or otherwise seek payment from any person insured under an Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the fraudulent conduct detailed in the within First Amended Complaint.

## XVI.  DEMAND FOR RELIEF

WHEREFORE, plaintiffs Liberty Mutual Fire Insurance Company, LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois respectfully pray that judgment enter in their favor as follows:

## COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
#### (Relief Enterprise)
**Against NextGen Pain Associates and Rehabilitation, LLC, Five Star Comfort Care, LLC, Orthopedic Medical Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
#### (Relief Enterprise)
**Against NextGen Pain Associates and Rehabilitation, LLC, Five Star Comfort Care, LLC, Orthopedic Medical Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Westborn Enterprise)
### Against NextGen Pain Associates and Rehabilitation, LLC, Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Westborn Enterprise)
### Against NextGen Pain Associates and Rehabilitation, LLC, Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT V
### VIOLATION OF 18 U.S.C. § 1962(c)
### (First National Enterprise)
### Against Vivid Rehab Inc, Steven Awada, Hussien Awada, and Lawrence Atat

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

157

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT VI
### VIOLATION OF 18 U.S.C. § 1962(d)
### (First National Enterprise)
### Against Vivid Rehab Inc, Steven Awada, Hussien Awada, and Lawrence Atat

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT VII
### VIOLATION OF 18 U.S.C. § 1962(c)
### (First Step Enterprise)
### Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)      AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)      GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)      GRANT all other relief this Court deems just.

## <u>COUNT VIII</u>
## VIOLATION OF 18 U.S.C. § 1962(d)
## (First Step Enterprise)
## Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob

(a)      AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)      AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)      GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT IX
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Doc PT Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT X
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Doc PT Enterprise)**
**Against NextGen Pain Associates and Rehabilitation, LLC, United Transportation 1 Inc., Steven Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Abdul Baydoun, and Nura Kutob**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Vivid Enterprise)
### Against First National Rehab, Inc., Steven Awada, Hussien Awada, and Lawrence Atat

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Vivid Enterprise)
### Against First National Rehab, Inc., Steven Awada, Hussien Awada, and Lawrence Atat

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)    GRANT all other relief this Court deems just.

**COUNT XIII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(NextGen Enterprise)**
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Five Star Comfort Care LLC, Orthopedic Medical Supplies 1, Ltd., Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XIV
## VIOLATION OF 18 U.S.C. § 1962(d)
### (NextGen Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Five Star Comfort Care LLC, Orthopedic Medical Supplies 1, Ltd., Steve's Medical Supply, Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XV
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Five Star Enterprise)
**Against NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ali Merhi, Abdul Baydoun, and Nura Kutob**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)      GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)      GRANT all other relief this Court deems just.

**COUNT XVI**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Five Star Enterprise)**
**Against NextGen Pain Associates and Rehabilitation LLC, Steven Awada,**
**Joseph Awada, Ali Merhi, Abdul Baydoun, and Nura Kutob**

(a)      AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)      AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)      GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)      GRANT all other relief this Court deems just.

**COUNT XVII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Steve's Medical Enterprise)**
**Against Westborn Physical Therapy, LLC, NextGen Pain Associates and**
**Rehabilitation LLC, Steven Awada, Abdul Baydoun, and Nura Kutob**

(a)      AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XVIII
## VIOLATION OF 18 U.S.C. § 1962(d)
### (Steve's Medical Enterprise)
### Against Westborn Physical Therapy, LLC, NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Abdul Baydoun, and Nura Kutob

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIX
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Orthopedic Medical Enterprise)
### Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XX
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Orthopedic Medical Enterprise)
### Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, NextGen Pain Associates and Rehabilitation LLC, Steven Awada, Joseph Awada, Ameer Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXI
## VIOLATION OF 18 U.S.C. § 1962(c)
### (United Transportation Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, and Mohamed Cheikh**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXII
### VIOLATION OF 18 U.S.C. § 1962(d)
#### (United Transportation Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Steven Awada, Joseph Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, and Mohamed Cheikh**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXIII
### VIOLATION OF 18 U.S.C. § 1962(c)
#### (City 2 City Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, NextGen Pain Associates and Rehabilitation, LLC, Steven Awada, Joseph Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT XXIV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (City 2 City Enterprise)
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, NextGen Pain Associates and Rehabilitation, LLC, Steven Awada, Joseph Awada, Ali Merhi, Mohamed Cheikh, Abdul Baydoun, and Nura Kutob**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within First Amended Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT XXV
### COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

### COUNT XXVI
### CIVIL CONSPIRACY
### Against All Defendants

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

### COUNT XXVII
### PAYMENT UNDER MISTAKE OF FACT
### Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical Supplies 1 Ltd., United Transportation 1, Inc., and City 2 City Transportation, LLC

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XXVIII
## UNJUST ENRICHMENT
**Against Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical Supplies 1 Ltd., United Transportation 1, Inc., and City 2 City Transportation, LLC**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XXIX
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
**Against All Defendants**

(a)     DECLARE that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Hussien Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh,

Lawrence Atat, Abdul Baydoun, and Nura Kutob for any or all of the reasons set out in the within First Amended Complaint;

(b)     DECLARE that Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Hussien Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh, Lawrence Atat, Abdul Baydoun, and Nura Kutob, jointly and severally, cannot seek payment from Liberty Mutual pursuant to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within First Amended Complaint;

(c)     DECLARE that Relief Physical Therapy & Rehab, Inc. d/b/a Relief Rehab, Westborn Physical Therapy, LLC, First National Rehab, Inc., First Step Rehab, Inc., Great Lakes Professional Services, LLC d/b/a Doc Physical Therapy & Rehab Center, Vivid Rehab Inc, NextGen Pain Associates and Rehabilitation LLC, Five Star Comfort Care, LLC, Steve's Medical Supply, Inc., Orthopedic Medical

Supplies 1, Ltd., United Transportation 1 Inc., City 2 City Transportation, LLC, Steven Awada, Joseph Awada, Hussien Awada, Imad Awada, Magdalene Awada, Ameer Awada, Mahmoud Awada, Ali Merhi, Mohamed Cheikh, Lawrence Atat, Abdul Baydoun, and Nura Kutob, jointly and severally, cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the fraudulent conduct detailed in the within First Amended Complaint; and

(d)     GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

## XVII.     DEMAND FOR JURY TRIAL

The plaintiffs hereby demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*

_____

Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
Andrew H. DeNinno
adeninno@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2303
Braintree, MA 02184
(617) 770-2214

*Attorneys for Plaintiffs Liberty Mutual Fire Insurance Company, LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois*

Dated:  September 16, 2019

## <u>CERTIFICATE OF SERVICE</u>

I, Jacquelyn A. McEttrick, attorney for the plaintiffs, hereby certify that I have served a copy of the foregoing papers on all parties of record in the above-captioned matter via CM/ECF filing and via the same method of service used to serve the Summons and Complaint in the within action.

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*
_____
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite St., Suite 2303
Braintree, MA 02184
(617) 770-2214